**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| XIANGRONG WANG,<br><br>Petitioner,<br><br>v.<br><br>LIJUN LU and MEI WANG,<br><br>Respondents. | Case No. |

**DECLARATION OF XINYU LIN IN SUPPORT OF PETITIONER'S PETITION TO RECOGNIZE, CONFIRM, AND ENFORCE FOREIGN ARBITRAL AWARD**

I, Xinyu Lin, being of lawful age, hereby state and declare as follows:

1.      I am an attorney licensed to practice law in China. I am an attorney at Zhejiang T&C Law Firm. I represented Xiangrong Wang ("Petitioner" or "Applicant") in the arbitration proceeding against Lijun Lu and Mei Wang ("Respondents") administered by Beijing Arbitration Commission/Beijing International Arbitration Center (the "BAC"). I submit this declaration in support of Petitioner's Petition to Confirm Arbitral Award and for Entry of Judgment. The statement in this declaration is true to the best of my knowledge, information, and belief.

2.      An arbitral award in *Xiangrong Wang v. Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd., Lijun Lu, Dongyang Certus*

1

*Information Technology Co., Ltd., Xingtai Certus Information Technology Co., Ltd., Mei Wang* was entered on February 5, 2024 (the "Final Award") by the BAC, ordering the Respondents to pay the Applicant:

(a)    The Respondents shall jointly pay the repurchase consideration of CNY 159,808,219.18 to the Petitioner in three installments. The payment time and amount for each installment are as follows:

(i)    The Respondents shall pay the first installment of CNY 55,545,205.48 to the Petitioner before February 25, 2024;

(ii)    The Respondents shall pay the second installment of CNY65,000,000.00 to the Petitioner before March 29, 2024; and

(iii)    The Respondents shall pay the third installment of CNY 39,263,013.70 to the Petitioner before April 30, 2024.

(b)    The Respondents shall jointly compensate the Petitioner for losses of CNY 1,833,013.87 before April 30, 2024.

(c)    The arbitration fee of the Case is CNY 930,963.26 (including the Arbitrators' remuneration of CNY 529,811.90 and the institution's fee of CNY 401,151.36, which has been fully prepaid by the Petitioner to the BAC), and the preservation fee is CNY 5,000, in total CNY 935,963.26, which shall be fully

2

borne by the Respondents. The Respondents shall directly pay the arbitration fee and preservation fee in total CNY 935,963.26 to the Petitioner before April 30, 2024.

(d)   If the Respondents failed to fulfill any of the above payment obligations in full and on time, they shall immediately jointly pay the outstanding repurchase consideration of CNY 152,280,821.92 to the Petitioner (provisionally calculated up to August 18, 2023; thereafter it shall be calculated based on the principal of CNY 125,000,000.00 at an annual interest rate of 10%, from August 19, 2023 until the full repurchase consideration is paid by the Respondents), the compensation for losses of CNY 1,833,013.87, and a penalty payment of CNY 10,000,000.00. Moreover, the Petitioner shall have the right to apply to the People's Court for compulsory execution of all the above outstanding amounts of the Respondents.

3.   A true and correct copy of the Final Award in Chinese and accompanied by a certified English translation are attached hereto as Exhibit A.

4.   A true and correct copy of the three Repurchase Agreements between  Petitioner and Respondent Lu, dated March 30, 2021, September 6, 2021, and December 20, 2021, respectively, as well as the Agreement on Arbitration and Debt Assumption dated January 19, 2024, in Chinese and accompanied by certified English translations, are attached to this declaration as

3

Exhibit B, which includes the arbitration provisions binding Petitioner and Respondents.

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed on this 29th day of April 2026, in Hangzhou, China.

_____
Xinyu Lin, Esq.

4

# Exhibit A



25029660-3 E A M

白·温岭

# 公 证 书

中华人民共和国浙江省温岭市公证处

北京仲裁委员会/北京国际仲裁中心

（2023）京仲案字第 06963 号仲裁案

---

王相荣

（申请人）

与

徐州华美琦悦企业管理咨询有限公司

LIJUN LU（逯利军）

东阳赛特斯信息科技有限公司

邢台赛特斯信息科技有限公司

MEI WANG（王梅）

（被申请人）

---

# 仲裁裁决书

（根据自 2022 年 2 月 1 日起施行的《北京仲裁委员会仲裁规则》作出）

---

仲裁庭：崔海燕、莫丽梅、陶景洲（首席）

仲裁地：中国北京

2024 年 2 月 5 日

# 目　录

一、简介 ................................................................. 1

　　（一）当事人 ........................................................ 1

　　（二）仲裁庭 ........................................................ 3

　　（三）本案合同 ...................................................... 3

　　（四）仲裁条款 ...................................................... 4

　　（五）适用规则 ...................................................... 4

　　（六）适用法 ........................................................ 4

　　（七）仲裁地 ........................................................ 4

　　（八）仲裁语言 ...................................................... 4

二、仲裁程序概述 ....................................................... 5

三、案件事实概述及有关合同约定 ......................................... 6

四、当事人的仲裁请求及主张 ............................................. 7

　　（一）申请人的仲裁请求及主张 ........................................ 7

　　（二）被申请人答辩 .................................................. 8

　　（三）双方提交的证据 ................................................ 9

五、仲裁庭意见 ........................................................ 10

六、裁决 .............................................................. 18

一、简介

（一）当事人

1. 本仲裁案（以下简称"**本案**"）当事人包括：

2. **王相荣**，中华人民共和国公民，以下称为"**申请人**"。

　身份证号码：330106197202220012

　住址：中国浙江省温岭市城西街道保塔路 1 号开元山庄豪庭苑 62 幢 1 号

　101 室

　申请人在本案中的代理人为：

　浙江天册律师事务所：夏德忠律师、林新宇律师

　地址：中国浙江省杭州市西湖区杭大路 1 号 A 座 11 楼

　电话：13905814550、17816876636

3. **徐州华美琦悦企业管理咨询有限公司**，一家根据中华人民共和国法律注册

　成立的有限责任公司，以下称为"**被申请人一**"。

　统一社会信用代码：913203005588734097

　住所：中国江苏省徐州市丰县王沟镇工业园区 12 号

　法定代表人：Lijun Lu(逯利军)

　被申请人一在本案中的代理人为：

　北京盈理律师事务所：郑海峰律师

　地址：中国北京市朝阳区建国门外大街 1 号国贸大厦 A 座 5001 室

　电话：18811512232

4. **LIJUN LU（逯利军）**，美利坚合众国公民，以下称为"**被申请人二**"。

　护照号码：548446178

　中华人民共和国外国人永久居留身份证证件号码：USA320168031703

地址：中国上海市浦东新区碧云路 777 弄 14 楼 1001

被申请人二在本案中的代理人为：

北京盈理律师事务所：郑海峰律师
地址：中国北京市朝阳区建国门外大街 1 号国贸大厦 A 座 5001 室
电话：18811512232

5.  东阳赛特斯信息科技有限公司，一家根据中华人民共和国法律注册成立的
    有限责任公司，以下称为"**被申请人三**"。
    统一社会信用代码：91330783MA2HT4UD2X
    住所：中国浙江省金华市东阳市南市街道五一工业功能区（自主申报）
    法定代表人：逯利军

被申请人三在本案中的代理人为：

北京盈理律师事务所：郑海峰律师
地址：中国北京市朝阳区建国门外大街 1 号国贸大厦 A 座 5001 室
电话：18811512232

6.  邢台赛特斯信息科技有限公司，一家根据中华人民共和国法律注册成立的
    有限责任公司，以下称为"**被申请人四**"。
    统一社会信用代码：91130596MA0FGE5323
    住所：中国河北省邢台市邢东新区园博园花雨巷 C3
    法定代表人：逯利军

被申请人四在本案中的代理人为：

北京盈理律师事务所：郑海峰律师
地址：中国北京市朝阳区建国门外大街 1 号国贸大厦 A 座 5001 室
电话：18811512232

7. MEI WANG（王梅），美利坚合众国公民，以下称为"**被申请人五**"，以下与上述四位被申请人合称"**被申请人**"或"**五被申请人**"。

护照号码：548446177

中华人民共和国外国人永久居留身份证证件号码：USA320168053002

地址：中国上海市浦东新区碧云路 777 弄 14 楼 1001

被申请人五在本案中的代理人为：

北京盈理律师事务所：郑海峰律师

地址：中国北京市朝阳区建国门外大街 1 号国贸大厦 A 座 5001 室

电话：18811512232

## （二）仲裁庭

8. 本案中，申请人选定**崔海燕**女士担任本案仲裁员。由于被申请人未在北京仲裁委员会/北京国际仲裁中心（以下简称"**本会**"）自 2022 年 2 月 1 日起施行的《北京仲裁委员会仲裁规则》（以下简称"**仲裁规则**"）规定期限内选定仲裁员，各方当事人亦未按期共同选定或共同委托本会主任指定首席仲裁员，本会主任根据仲裁规则指定**陶景洲**先生担任本案首席仲裁员，指定**莫丽梅**女士担任本案仲裁员。

9. 前述三位仲裁员于 2023 年 11 月 22 日组成仲裁庭，共同审理本案。

## （三）本案合同

10. 2021 年 3 月 30 日、2021 年 9 月 6 日、2021 年 12 月 20 日，申请人与被申请人一、二分别签订了三份《关于赛特斯股票收益权的回购协议》（以下统称"**本案合同**"）。约定申请人有权在各份本案合同签订后 18 个月观察期届满之日起任意时间要求被申请人一履行回购义务，被申请人二承担无限连带保证责任。

（四）仲裁条款

11.    本案合同第七条第 1 款约定的争议解决条款如下：

> "……因本协议产生的、或与本协议有关的争议应首先通过协商解决；协商不成，任何一方有权提请北京仲裁委员会按照其仲裁规则进行仲裁。"

（五）适用规则

12.    本案仲裁程序依照仲裁规则第八章国际商事仲裁的特别规定进行。

（六）适用法

13.    本案合同第七条第 1 款约定的适用法律如下：

> "本协议适用中国（为本协议之目的，不包括香港特别行政区、澳门特别行政区和台湾地区）法律。"

14.    根据当事人的约定，本案适用的实体法律应为中华人民共和国法律。

（七）仲裁地

15.    仲裁规则第二十七条第（一）款规定：

> "除非当事人另有约定，本会所在地为仲裁地。本会也可以根据案件具体情况确定其他地点为仲裁地。"

16.    根据上述规定，本会结合本案实际情况确定本案的仲裁地应为中华人民共和国北京市。

（八）仲裁语言

17. 因双方当事人未约定仲裁语言，仲裁庭结合本案合同的书写语言及本案整体情况，根据仲裁规则第七十二条的规定，确定以中文作为本案的仲裁语言。

二、仲裁程序概述

18. 2023 年 8 月 21 日，申请人向本会提交《仲裁申请书》及申请人证据一至证据十四。

19. 本会依据申请人提交的仲裁申请书、本案合同中的仲裁条款及有关法律的规定，于 2023 年 8 月 25 日受理本案。本案编号为（2023）京仲案字第 06963 号。

20. 本会受理本案后，按照仲裁规则的规定，向申请人送达了受理通知、仲裁规则、《北京仲裁委员会仲裁员名册》（以下简称"仲裁员名册"）等文件，向被申请人一、被申请人二送达了答辩通知、仲裁规则、仲裁员名册、申请人提交的仲裁申请书以及相关证据材料。

21. 2023 年 9 月 26 日，申请人向本会提交证据十五至证据十六。本会向被申请人一、二送达了该两份证据。

22. 2023 年 11 月 23 日，本会向申请人及被申请人一、二发送《组庭通知》和《开庭通知》，告知各方本案仲裁庭的组成情况及仲裁庭确定的开庭时间。各方当事人均未对仲裁庭的组成提出异议。

23. 2023 年 12 月 27 日，本会向申请人及被申请人一、二发送《开庭改期通知》，告知各方当事人仲裁庭决定变更的开庭时间。

24. 在本案审理过程中，申请人与被申请人一、二达成了和解，并于 2024 年 1 月 19 日签订了《（2023）京仲案字第 06963 号案件和解协议》（以下简称"《和解协议》"），并请求仲裁庭依据《和解协议》出具裁决书。

25. 本案各方当事人于 2024 年 1 月 19 日签订了《（2023）京仲案字第 06963 号

案件仲裁协议暨债务加入协议》（以下简称"《加入协议》"），被申请人三、被申请人四、被申请人五提交了参加仲裁申请书，申请依据《和解协议》及《加入协议》作为本案被申请人，并同意放弃对申请人全部仲裁请求的答辩期、送达期限和选定仲裁员的权利。仲裁庭于 2024 年 1 月 31 日受理了上述申请，将其作为本案被申请人，其他各方对此均未提出异议。

26. 本案现已全部审理完结。仲裁庭根据当事人提供的书面材料及查明的事实，依照相关法律、仲裁规则规定及双方的《和解协议》，经合议，依法作出本裁决。

三、案件事实概述及有关合同约定

27. 申请人、被申请人一、被申请人二于 2021 年 3 月 23 日、2021 年 8 月 25 日、2021 年 12 月 15 日分别签订了三份《借款合同》，约定被申请人一向申请人分别借款 8,000 万元（指人民币，以下同，仲裁庭注）、2,500 万元、2,000 万元。

28. 申请人与被申请人一、二于 2021 年 3 月 30 日、2021 年 9 月 6 日、2021 年 12 月 20 日分别签订《关于赛特斯股票收益权的转让协议》（以下称"《收益权转让协议》"），协议约定：被申请人一将其持有的赛特斯信息科技股份有限公司部分股票对应的收益权转让给申请人。转让价款总额分别为 8,000 万元、2,500 万元、2,000 万元，并以三份《借款合同》所涉借款冲抵各份《收益权转让协议》项下的交易对价。申请人有权要求被申请人一回购申请人享有的全部或部分转让标的，具体由协议各方另行协商确定。

29. 申请人分别于签订上述三份《收益权转让协议》的同日，与被申请人一、二签订了本案合同。本案合同均约定：申请人、被申请人一同意设置自各份本案合同签订之日开始分别为期 18 个月的观察期，申请人有权在观察期届满之日起的任意时间向被申请人一发出书面通知，要求被申请人一回购申请人依据各份《收益权转让协议》所享有的全部转让标的。

30. 各份《收益权转让协议》及本案合同均约定，被申请人二就被申请人一在上述各协议项下应履行的各项责任与义务为被申请人一承担无限连带保证责任，包括但不限于标的股票收入的支付义务、转让标的的回购义务、违约责任及其他任何责任及义务。

31. 2023 年 8 月 14 日，申请人通过快递与电子邮件的方式向被申请人一、二发送《关于要求支付回购对价的通知函》，要求被申请人一履行回购义务，支付全部回购对价 152,143,835.62 元（暂计至 2023 年 8 月 14 日），并要求被申请人二承担无限连带担保责任。

四、当事人的仲裁请求及主张

（一）申请人的仲裁请求及主张

1.申请人的仲裁请求

32. 申请人的仲裁请求为：

　　　　(1)被申请人一立即向申请人支付回购对价 152,280,821.92 元（暂计至 2023 年 8 月 18 日），并支付以 12,500 万元为基数，以年利率 10%为标准，自 2023 年 8 月 19 日起至被申请人一支付完毕全部回购对价之日止的全部回购对价；

　　　　(2)被申请人一立即向申请人支付滞纳金 456,842.47 元（暂计至 2023 年 8 月 21 日），并支付以全部回购对价为基数，以每日千分之一为标准，自 2023 年 8 月 22 日起至被申请人一支付完毕全部回购对价之日止的全部滞纳金；

　　　　(3)被申请人一立即向申请人赔偿损失（律师费 174.8 万元、担保费 85,013.87 元）计 1,833,013.87 元；

　　　　(4)被申请人二对被申请人一的上述第一项、第二项、第三项全部债务承

担无限连带担保责任；

(5) 本案的仲裁费用、保全费用 5,000 元由被申请人一、被申请人二承担。

**2.申请人仲裁请求依据的事实与理由**

33. 申请人主张，其与被申请人一、二于 2021 年 3 月 23 日、2021 年 8 月 25 日、2021 年 12 月 15 日分别签订了三份《借款合同》，约定被申请人一向申请人分别借款 8,000 万元、2,500 万元、2,000 万元。申请人与被申请人一、二于 2021 年 3 月 30 日、2021 年 9 月 6 日、2021 年 12 月 20 日签订《收益权转让协议》，约定：被申请人一将其持有的赛特斯信息科技股份有限公司部分股票对应的收益权转让给申请人，转让价款总额分别为 8,000 万元、2,500 万元、2,000 万元，分别以三份《借款合同》所涉借款冲抵各份《收益权转让协议》项下的交易对价，同日，申请人还与被申请人一、二签订了本案合同。

34. 另外，申请人、被申请人一同意设置自各份本案合同签订之日开始分别为期 18 个月的观察期，申请人有权在观察期届满之日起的任意时间向被申请人一发出书面通知，要求被申请人一回购申请人依据各份《收益权转让协议》所享有的全部转让标的。

35. 被申请人二就被申请人一在上述各协议项下应履行的各项责任与义务承担无限连带保证责任，包括但不限于标的股票收入的支付义务、转让标的的回购义务、违约责任及其他任何责任及义务。

36. 现各份本案合同约定的观察期均已届满，且申请人已向被申请人一、二发出要求支付回购对价的书面通知，但被申请人一至今未履行支付回购对价的合同义务，被申请人二亦未按约承担担保责任。

**（二）被申请人答辩**

37. 针对申请人的上述仲裁请求，被申请人未提交书面答辩意见。

（三）双方提交的证据

**1.申请人的证据**

38.　本案中，申请人为支持自己的仲裁请求，提交了以下证据：

证据 1. 2021 年 3 月 23 日《借款合同》（第 1 份）；

证据 2. 2021 年 8 月 25 日《借款合同》（第 2 份）；

证据 3. 2021 年 12 月 15 日《借款合同》（第 3 份）；

证据 4. 付款凭证；

证据 5. 2021 年 3 月 30 日《关于赛特斯股票收益权的转让协议》（"收益权转让协议"）（第 1 份）；

证据 6. 2021 年 3 月 30 日《关于赛特斯股票收益权的回购协议》（"收益权回购协议"）（第 1 份）；

证据 7. 2021 年 4 月 7 日《关于赛特斯股票收益权的回购协议之补充协议》（"补充协议"）；

证据 8. 2021 年 9 月 6 日《关于赛特斯股票收益权的转让协议》（"收益权转让协议"）（第 2 份）；

证据 9. 2021 年 9 月 6 日《关于赛特斯股票收益权的回购协议》（"收益权回购协议"）（第 2 份）；

证据 10. 2021 年 12 月 20 日《关于赛特斯股票收益权的转让协议》（"收益权转让协议"）（第 3 份）；

证据 11. 2021 年 12 月 20 日《关于赛特斯股票收益权的回购协议》（"收益权回购协议"）（第 3 份）；

证据 12.《关于要求支付回购对价的通知函》及其送达记录；

证据 13.《律师委托代理合同》；

证据 14. 担保费付款凭证；

证据 15. 保全费用付款凭证；

证据 16. 保全费用收款票据。

**2.被申请人的证据**

39. 本案中，被申请人未提交证据。

## 五、仲裁庭意见

40. 基于本案全部案件材料以及当事人签订的《和解协议》，仲裁庭现根据相关法律及仲裁规则的规定，结合本案审理情况，分别阐述如下仲裁庭意见：

41. 仲裁庭认为，本案合同、《和解协议》及《加入协议》系当事人真实意思的表示，其内容并未违反法律、行政法规的效力性强制性规定，亦未侵犯他人合法权益，仲裁庭对其内容予以尊重。《和解协议》一经本案当事人签署，即对本案申请人和被申请人具有法律约束力。

42. 鉴于本案当事人就申请人相关仲裁请求已达成一致，并请求仲裁庭依据《和解协议》制作裁决书，故，仲裁庭认为，对于申请人关于回购对价和相关损失的仲裁请求，仲裁庭同意按照《和解协议》中当事人确认的金额予以支持；对于申请人放弃的仲裁请求，仲裁庭尊重《和解协议》中申请人对该请求的自行处分，不予支持；对于申请人关于本案仲裁费用、保全费用的仲裁请求，仲裁庭尊重并采纳《和解协议》中本案当事人关于本案仲裁费、保全费由被申请人全部承担的约定，对于被申请人三、被申请人四、被申请人五债务加入及违约金，仲裁庭亦尊重并采纳《和解协议》中的约定。

43.   双方在《和解协议》中约定：

"第一条  乙方（指被申请人一，下同，仲裁庭注）、丙方（指被申请人二，下同，仲裁庭注）、丁方（指被申请人三，下同，仲裁庭注）、戊方（指被申请人四，下同，仲裁庭注）、庚方（指被申请人五，下同，仲裁庭注）对甲方（指申请人，下同，仲裁庭注）在本案中提出的全部仲裁请求无异议，且丁方、戊方、庚方自愿立即加入本案甲方全部仲裁请求对应的乙方、丙方债务，即乙方、丙方、丁方、戊方、庚方承诺：

（一）乙方、丙方、丁方、戊方、庚方认可应立即共同向甲方支付回购对价人民币 152,280,821.92 元（暂计至 2023 年 8 月 18 日），并应支付以 12500 万元为基数，以年利率 10%为标准，自 2023 年 8 月 19 日起至乙方、丙方、丁方、戊方、庚方支付完毕全部回购对价之日止的全部回购对价；

（二）乙方、丙方、丁方、戊方、庚方认可应立即共同向甲方支付滞纳金人民币 456,842.47 元（暂计至 2023 年 8 月 21 日），并应支付以全部回购对价为基数，以每日千分之一为标准，自 2023 年 8 月 22 日起至乙方、丙方、丁方、戊方、庚方支付完毕全部回购对价之日止的全部滞纳金；

（三）乙方、丙方、丁方、戊方、庚方认可应立即共同向甲方赔偿损失（律师费 174.8 万元、担保费 85013.87 元）计人民币 1,833,013.87 元；

（四）北京仲裁委员会（2023）京仲案字第 06963 号的仲裁费用（930,963.26 元）及保全费 5,000 元由乙方、丙方、丁方、戊方、庚方承担。

11 / 19

在本协议生效后，甲方同意放弃其在（2023）京仲案字第 06963 号仲裁案中提出的第二项仲裁请求。

第二条 乙方、丙方、丁方、戊方、庚方承诺在 2024 年 4 月 30 日前履行本协议第一条约定的回购对价、赔偿损失、仲裁费用、保全费支付义务。经各方协商后确认，乙方、丙方、丁方、戊方、庚方在 2024 年 4 月 30 日前应共同支付给甲方的总金额为 162,577,196.31 元，其中，全部回购对价为 159,808,219.18 元，损失为 1,833,013.87 元，仲裁费用、保全费用为 935,963.26 元。

乙方、丙方、丁方、戊方、庚方承诺具体按照如下期限和金额，共同向甲方分期履行上述支付义务：

（一）2024 年 2 月 25 日前，归还本金 45,000,000 元（对应 2021 年 9 月 6 日本金 2500 万元、2021 年 12 月 20 日本金 2000 万元），支付利息 10,545,205.48 元，合计 55,545,205.48 元；

（二）2024 年 3 月 29 日前，归还本金 50,000,000 元（对应 2021 年 3 月 30 日本金 8000 万元的一部分），支付利息 15,000,000.00 元，合计 65,000,000.00 元；

（三）2024 年 4 月 30 日前，归还本金 30,000,000 元（对应 2021 年 3 月 30 日本金 8000 万元剩余部分），支付利息 9,263,013.70 元；合计 39,263,013.70 元。

上述共分期支付合计本金 1.25 亿元、利息 34,808,219.18 元，合计 159,808,219.18 元。

（四）2024 年 4 月 30 日前，支付损失 1,833,013.87 元，

支付仲裁费用、保全费用 935,963.26 元，合计 2,768,977.13 元。（甲方同意在乙方、丙方、丁方、戊方、庚方共同完成支付上述本息合计 159,808,219.18 元后，再经各方协商后可对损失金额予以部分豁免。）

第三条 如乙方、丙方、丁方、戊方、庚方违反本协议约定的任何义务或承诺，则乙方、丙方、丁方、戊方、庚方应立即一次性向甲方共同支付甲方在本案中提出的第二项仲裁请求以外的全部仲裁请求金额，及共同向甲方另行支付【1000】万元的违约金，且甲方有权就乙方、丙方、丁方、戊方、庚方的上述全部未付款项一并向人民法院申请强制执行。如乙方、丙方、丁方、戊方、庚方违反本协议的任何义务或承诺，且甲方未能根据本协议约定及据此作出的仲裁裁决书向人民法院直接申请强制执行对应的义务/债务的，甲方仍有权另行根据本协议向北京仲裁委员会申请仲裁，且乙方、丙方、丁方、戊方、庚方需另行向甲方共同连带承担违约责任，违约责任包括立即共同赔偿甲方因此产生的全部损失（包括但不限于直接损失、预期利益损失，以及仲裁/诉讼费、律师费、保全费、担保费、差旅费等全部实现债权费用）。

因丁方自愿以其名下的东阳赛特斯通信设备有限公司的 100%股权向甲方提供质押担保，以保障甲方享有的本案全部债权的实现，甲方有权就丁方名下的东阳赛特斯通信设备有限公司的 100%股权的折价、拍卖或变卖价款享有优先受偿权。甲方有权同时要求本协议其余任何一方承担保证责任/股权质押担保责任或履行债务。

第四条 各方同意北京仲裁委员会按本和解协议内容制作仲裁裁决书（具体名称以北京仲裁委员会出具的法律文书为准，具体裁决项以本协议附件为准），由此产生的全部费用由乙方、丙方、丁方、戊方、庚方承担。

第五条 甲方同意，在本案仲裁庭正式同意丁方、戊方、庚方作为被申请人加入本案仲裁，且丁方根据与本协议其他各方签订的《仲裁协议暨债务加入协议》约定，将丁方持有的东阳赛特斯通信设备有限公司 100%股权出质给甲方、完成股权质押登记后，北京仲裁委员会作出本案和解的仲裁裁决书后 2 个工作日内，甲方向北京仲裁委员会、南京市中级人民法院提交解除对乙方名下财产的保全之申请。若甲方未能按照本条约定按时提交解除保全申请的，甲方应承担【1000】万元的违约金，该违约金金额抵扣乙方、丙方、丁方、戊方、庚方在本协议第二条项下约定的应当支付的金额。后续再由各方协商决定是否解除甲方对丙方剩余的全部财产保全措施。

第六条 除法律规定或行政机关、司法机关要求外，乙方、丙方、丁方、戊方、庚方未经甲方书面同意不得向任何第三方透露本协议内容。

第七条 本协议于各方签字或盖章之日后于本协议约定的签署日期生效，但任何一方自签署本协议时起即视为向相对方承诺履行本协议约定的义务。

未经甲方同意，协议生效后，任何一方不得擅自解除、终止本协议。

本协议的任何补充、变更应经各方另行协商，并就补充、

变更事项共同签署书面协议后方可生效，但其中仅涉及补充或变更本协议特定方权利义务的，仅需此等特定方之间达成书面形式约定。

本协议未尽事宜，各方可另行签署补充协议，该补充协议与本协议是一个不可分割的整体。本协议被终止/解除的，不影响甲方要求乙方、丙方、丁方、戊方、庚方承担违约责任的权利。

未经甲方书面同意，乙方、丙方、丁方、戊方、庚方不得转让其在本协议项下全部和/或部分的权利/义务。

第八条 本协议的订立、效力、解释、履行和争议的解决应受中国法律的管辖，并依其解释。

第九条 乙方、丙方、丁方、戊方、庚方承诺，联系方式不予变动，甲方向乙方、丙方、丁方、戊方、庚方任何一方发出的通知可送达至乙方、丙方、丁方、戊方、庚方在本协议中注明的住所地/联系电话/联系电话绑定的社交平台账号任何一处即可，且自甲方当面递交或交邮或通过短信/电子邮件/应用程序等发出时视为送达。

第十条 本协议所称"元"，均指人民币元。本协议所称"书面"，均指以邮件、电子邮件、应用程序（如微信、钉钉等）等途径送达的、能够借助相关载体直接体现可阅读内容的非口头形式。

本协议用中文书写，一式七份，各方各持一份，余一份交给北京仲裁委员会，由本案仲裁庭依据本和解协议出具裁决书，各份均具有同等法律效力。

本和解协议签订于杭州市钱塘区。"

44.　各方还就在《和解协议》中就申请本案作出和解裁决的主文项达成一致：

"一、被申请人徐州华美琦悦企业管理咨询有限公司、
LIJUN LU（逯利军）、东阳赛特斯信息科技有限公司、邢台
赛特斯信息科技有限公司、MEI WANG（王梅）向申请人王
相荣共同支付回购对价人民币 159,808,219.18 元，该回购
对价分三期支付，第一期 55,545,205.48 元于 2024 年 2 月
25 日前支付，第二期 65,000,000.00 元于 2024 年 3 月 29
日前支付，第三期 39,263,013.70 元于 2024 年 4 月 30 日
前支付；

二、被申请人徐州华美琦悦企业管理咨询有限公司、LIJUN
LU（逯利军）、东阳赛特斯信息科技有限公司、邢台赛特斯
信息科技有限公司、MEI WANG（王梅）向申请人王相荣共
同赔偿损失人民币 1,833,013.87 元，该款项于 2024 年 4
月 30 日前支付；

三、本案的仲裁费用、保全费用共计人民币 935,963.26 元，
由被申请人徐州华美琦悦企业管理咨询有限公司、LIJUN
LU（逯利军）、东阳赛特斯信息科技有限公司、邢台赛特斯
信息科技有限公司、MEI WANG（王梅）承担，于 2024 年 4
月 30 日前直接支付给申请人王相荣；

四、若被申请人徐州华美琦悦企业管理咨询有限公司、
LIJUN LU（逯利军）、东阳赛特斯信息科技有限公司、邢台
赛特斯信息科技有限公司、MEI WANG（王梅）未按期足额
履行上述任何一项付款义务，则应向申请人王相荣立即共
同支付剩余未付的全部回购对价人民币 152,280,821.92 元

16 / 19

[暂计至 2023 年 8 月 18 日，之后以 12,500 万元为基数，以年利率 10% 为标准，自 2023 年 8 月 19 日起至被申请人徐州华美琦悦企业管理咨询有限公司、LIJUN LU（逯利军）、东阳赛特斯信息科技有限公司、邢台赛特斯信息科技有限公司、MEI WANG（王梅）支付完毕全部回购对价之日止的全部回购对价]，赔偿损失人民币 1,833,013.87 元，并立即共同支付违约金人民币 10,000,000.00 元，且申请人王相荣有权就被申请人徐州华美琦悦企业管理咨询有限公司、LIJUN LU（逯利军）、东阳赛特斯信息科技有限公司、邢台赛特斯信息科技有限公司、MEI WANG（王梅）的上述全部未付款项一并向人民法院申请强制执行；

五、申请人王相荣自愿放弃其他仲裁请求。"

45. 综上，仲裁庭认为，五被申请人应当按照如下期限和数额向申请人支付款项：

46. 五被申请人向申请人共同支付回购对价 159,808,219.18 元，该回购对价分三期支付，第一期 55,545,205.48 元于 2024 年 2 月 25 日前支付，第二期 65,000,000.00 元于 2024 年 3 月 29 日前支付，第三期 39,263,013.70 元于 2024 年 4 月 30 日前支付。

47. 五被申请人向申请人共同赔偿损失 1,833,013.87 元，该款项于 2024 年 4 月 30 日前支付。

48. 五被申请人向申请人共同支付本案的仲裁费用、保全费用共计 935,963.26 元，该款项于 2024 年 4 月 30 日前支付。

49. 若五被申请人未按期足额履行上述任何一项付款义务，则应向申请人立即共同支付剩余未付的全部回购对价 152,280,821.92 元（暂计至 2023 年 8 月 18 日，之后以 12,500 万元为基数，以年利率 10% 为标准，自 2023 年 8 月 19 日起至被申请人支付完毕全部回购对价之日止的全部回购对价），赔偿损失

17 / 19

1,833,013.87 元，并立即共同支付违约金 10,000,000.00 元，且申请人有权就五被申请人的上述全部未付款项一并向人民法院申请强制执行。

## 六、裁决

50.    基于上述分析和认定，仲裁庭最终裁决如下：

（一）五被申请人向申请人共同支付回购对价 159,808,219.18 元，该回购对价分为如下三期支付，每期款项的支付时间和金额如下：

(1)五被申请人于 2024 年 2 月 25 日前向申请人支付第一期款项 55,545,205.48 元；

(2)五被申请人于 2024 年 3 月 29 日前向申请人支付第二期款项 65,000,000.00 元；

(3)五被申请人于 2024 年 4 月 30 日前向申请人支付第三期款项 39,263,013.70 元；

（二）五被申请人于 2024 年 4 月 30 日前向申请人共同赔偿损失 1,833,013.87 元；

（三）本案仲裁费 930,963.26 元（含仲裁员报酬 529,811.90 元，机构费用 401,151.36 元，已由申请人向本会全额预交），保全费用 5,000 元，合计 935,963.26 元，由五被申请人全额承担，五被申请人于 2024 年 4 月 30 日前直接向申请人支付仲裁费及保全费合计 935,963.26 元；

（四）若五被申请人未按期足额履行上述任何一项付款义务，则应向申请人立即共同支付剩余未付的全部回购对价 152,280,821.92 元（暂计至 2023 年 8 月 18 日，之后以 12,500 万元为基数，以年利率 10%为标准，自 2023 年 8 月 19 日起至五被申请人支付完毕全部回购对价之日止的全部回购对价）、赔偿损失 1,833,013.87 元，并立即共同支付

违约金 10,000,000.00 元，且申请人有权就五被申请人的上述全部未

付款项一并向人民法院申请强制执行；

（五）　申请人放弃其他仲裁请求。

51.　本裁决为终局裁决，自作出之日起生效。



崔海燕

（仲裁员）

莫丽梅

（仲裁员）



陶景洲

（首席仲裁员）



北京仲裁委员会/北京国际仲裁中心



**Beijing Arbitration Commission/Beijing International Arbitration Center**

**(2023) JZAZ No. 06963 Arbitration Case**

**Wang Xiangrong**

*(The Applicant)*

&

**Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.**

**LIJUN LU**

**Dongyang Certus Information Technology Co., Ltd.**

**Xingtai Certus Information Technology Co., Ltd.**

**MEI WANG**

*(The Respondent)*

## Arbitration Award

(made in accordance with the *Arbitration Rules of the Beijing Arbitration Commission*

that came into effect on February 1, 2022)

**Arbitration Tribunal:** Cui Haiyan, Mo Limei, Tao Jingzhou (Chief Arbitrator)

**Arbitration Locality:** Beijing, China

February 5, 2024

Beijing Arbitration Commission (Seal on Perforation)

Content

I. Introduction

(I) Parties

(II) Arbitration Tribunal

(III) Subject Contracts in this Case

(IV) Arbitration Clauses

(V) Applicable Rules

(VI) Applicable Laws

(VII) Arbitration Locality

(VIII) Arbitration Language

II. Overview of Arbitral Proceedings

III. III.Facts and Relevant Contractual Agreements of the Case

IV. Requests and Claims of the Parties

(I) Requests and Claims of the Applicant

(II) Defense of the Respondents

(III) Evidence Provided by the Parties

V. Opinions of the Arbitration Tribunal

VI. Arbitration

## I. Introduction

### (I) Parties

1. Parties of this arbitration case (hereafter referred to as 'this Case') include:

2. **Wang Xiangrong**, a citizen of the People's Republic of China, hereinafter referred to as 'the Applicant'.

   ID No. 330106197202220012

   Residence: Room 101, No. 1, Building 62, Haotingyuan, Kaiyuan Villa, No. 1 Baota Road, Chengxi Sub-district, Wenling City, Zhejiang Province, China

   Agent of the Applicant for this Case:

   Zhejiang Tiance Law Firm: Lawyer Xia Dezhong, Lawyer Lin Xinyu

   Address: 11th Floor, Block A, No. 1 Hangda Road, Xihu District, Hangzhou City, Zhejiang Province, China

   Tel.: 13905814550, 17816876636

3. **Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.**, a limited liability company registered in accordance with the laws of the People's Republic of China, hereinafter referred to as the '**Respondent I**'.

   Unified Social Credit Code: 913203005588734097

   Address: No. 12, Industrial Park, Wanggou Town, Feng County, Xuzhou City, Jiangsu Province, China

   Legal Representative: Lijun Lu

   Agent of the Respondent I for this Case:

   Beijing Yingli Law Firm: Lawyer Zheng Haifeng

   Address: Room 5001, Block A, Guomao Building, No. 1, Jianguomenwai Street, Chaoyang District, Beijing, China

   Tel.: 18811512232

4. **LIJUN LU**, a citizen of the United States of America, hereinafter referred to as the '**Respondent II**'.

Passport No. 548446178

ID No. of the Permanent Residence Permit for Foreigners of the People's Republic of China: USA320168031703

Residence: Room 1001, 14th Floor, Lane 777, Biyun Road, Pudong New Area, Shanghai, China

Agent of the Respondent II for this Case:

Beijing Yingli Law Firm: Lawyer Zheng Haifeng
Address: Room 5001, Block A, Guomao Building, No. 1, Jianguomenwai Street, Chaoyang District, Beijing, China
Tel.: 18811512232

5. **Dongyang Certus Information Technology Co., Ltd.**, a limited liability company registered in accordance with the laws of the People's Republic of China, hereinafter referred to as the '**Respondent III**'.
Unified Social Credit Code: 91330783MA2HT4UD2X
Address: Wuyi Industrial Function Zone, Nanshi Sub-district, Dongyang City, Jinhua City, Zhejiang Province, China (Self-declared)
Legal Representative: Lijun Lu

Agent of the Respondent III for this case:

Beijing Yingli Law Firm: Lawyer Zheng Haifeng
Address: Room 5001, Block A, Guomao Building, No. 1, Jianguomenwai Street, Chaoyang District, Beijing, China
Tel.: 18811512232

6. **Xingtai Certus Information Technology Co., Ltd.**, a limited liability company registered in accordance with the laws of the People's Republic of China, hereinafter referred to as the '**RespondentIV**'.
Unified Social Credit Code: 91130596MA0FGE5323
Address: C3, Huayu Lane, Garden Expo Park, Xingdong New District, Xingtai City, Hebei Province, China

Legal Representative: Lijun Lu

Agent of the Respondent IV for this case:

Beijing Yingli Law Firm: Lawyer Zheng Haifeng
Address: Room 5001, Block A, Guomao Building, No. 1, Jianguomenwai Street, Chaoyang District, Beijing, China
Tel.: 18811512232

7. **MEI WANG**, a citizen of the United States of America, hereinafter referred to as the '**Respondent V**'; hereinafter, together with the above four Respondents, are collectively referred to as '**Respondents**' or '**Five Respondents**'.
Passport No. 548446177
ID No. of the Permanent Residence Permit for Foreigners of the People's Republic of China: USA320168053002
Residence: Room 1001, 14th Floor, Lane 777, Biyun Road, Pudong New Area, Shanghai, China

Agent of the Respondent V for this case:

Beijing Yingli Law Firm: Lawyer Zheng Haifeng
Address: Room 5001, Block A, Guomao Building, No. 1, Jianguomenwai Street, Chaoyang District, Beijing, China
Tel.: 18811512232

## (II) Arbitration Tribunal

8. In this Case, the Applicant designated Ms. **Cui Haiyan** as the Arbitrator of this Case. As the Respondents failed to select an arbitrator within the time limit prescribed under the *Arbitration Rules of the Beijing Arbitration Commission* (effective since February 1, 2022, hereinafter referred to as the '**Arbitration Rules**') by the Beijing Arbitration Commission/Beijing International Arbitration Center (hereinafter '**the Commission**'), and the Parties neither jointly selected nor jointly entrusted the Commission's Director to appoint a chief arbitrator within the stipulated period, the Commission's Director hereby appointed Mr. **Tao Jingzhou**

4 / 23

as the Chief Arbitrator of this Case and Ms. Mo Limei as the Arbitrator in accordance with the Arbitration Rules.

9. The above three arbitrators formed an arbitration tribunal on November 22, 2023 to jointly hear this Case.

## (III) Subject Contracts in this Case

10. On March 30, 2021, September 6, 2021, and December 20, 2021, the Applicant signed three *Repurchase Agreement Regarding Certus Stock Income Rights Between Wang Xiangrong & Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.* (hereinafter collectively referred to as the '**Subject Contracts in this Case**') with the Respondents I&II respectively. The Applicant shall have the right to demand that the Respondent I perform the repurchase obligations at any time after the expiration of the 18-month Observation Period from the execution date of each Subject Contract.

## (IV) Arbitration Clauses

11. The Subject Contracts stipulate the following dispute resolution mechanism:
    *'Any dispute arising from or in connection with this Agreement shall first be resolved through negotiation; if negotiation fails, either Party may submit the dispute to the Beijing Arbitration Commission for arbitration in accordance with the arbitration rules.'*

## (V) Applicable Rules

12. The arbitration procedure of this case shall be conducted in accordance with Chapter VIII: Special Provisions for International Commercial Arbitration of the Arbitration Rules.

## (VI) Applicable Laws

13. The Subject Contracts stipulate the following governing law provision:
    *'This Agreement shall be governed by and construed in accordance with the laws of China (for purposes of this Agreement, excluding Hong Kong SAR, Macau SAR,*

*and Taiwan Region).'*

14. Pursuant to the Parties' agreement, the applicable law governing this Case shall be the laws of the People's Republic of China.

## (VII) Arbitration Locality

15. Article 27 (1) of the Arbitration Rules stipulates:

    *'Unless otherwise agreed by the parties, the place of arbitration shall be the location of this Commission. The Commission may also determine another location as the arbitration locality based on the specific circumstances of the case.'*

16. Pursuant to the above rules, this Commission, and having considered the specific situations of this Case, this Commission hereby determines the Arbitration Locality for this Case shall be Beijing, the People's Republic of China.

## (VIII) Arbitration Language

17. As the Parties have not agreed on the arbitration language, the Arbitration Tribunal, having considered the writing language of the Subject Contracts in this Case and the overall situations of this Case, has determined in accordance with the provisions of Article 72 of the Arbitration Rules that Chinese shall be the arbitration language for this case.

## II. Overview of Arbitral Proceedings

18. On August 21, 2023, the Applicant submitted the *Application for Arbitration* and evidence 1 ~ 14 to this Commission.

19. Based on the Application for Arbitration submitted by the Applicant, the Arbitration Clauses in the Subject Contracts in this Case, and relevant laws, this Commission registered this Case on August 25, 2023. The code of this Case: (2023) JZAZ No. 06963.

20. After registering for this Case, this Commission, in accordance with the Arbitration Rules, delivered to the Applicant the Notice of Acceptance, the

Arbitration Rules, the *List of Arbitrators of the Beijing Arbitration Commission* (hereinafter referred to as the 'List of Arbitrators') and other documents, and delivered to the Respondents I&II the Notice of Defense, the Arbitration Rules, the List of Arbitrators, the Arbitration Application submitted by the Applicant and relevant evidence materials.

21. On September 26, 2023, the Applicant submitted Evidence 15 ~ 16 to this Commission. This Commission delivered the two pieces of evidence to the Respondents I&II.

22. On November 23, 2023, this Commission delivered the *Notice of Court Formation* and the *Notice of Arbitration Hearing* to the Applicant and Respondents I&II, informing all Parties of the composition of the Arbitration Tribunal for this case and the hearing time determined by the Arbitration Tribunal. None of the Parties raised any objection to the composition of the Arbitration Tribunal.

23. On December 27, 2023, this Commission delivered the *Notice of Rescheduling the Hearing* to the Applicant and Respondents I&II, informing all Parties of the rescheduling time of the hearing determined by the Arbitration Tribunal.

24. The Applicant and Respondents I&II reached settlement during the hearing and signed the *Settlement Agreement of Case (2023) JZAZ No. 06963* (hereinafter the 'Settlement Agreement') on January 19, 2024, thereby requesting the Arbitration Tribunal to issue an arbitration award based on the *Settlement Agreement*.

25. All Parties signed the *Arbitration Agreement and Debt Accession Agreement of Case (2023) JZAZ No. 06963* (hereinafter referred to as the 'Accession Agreement') on January 19, 2024. The Respondents III, IV, & V submitted Applications to participate in the Arbitration as the Respondents in this Case based on the *Settlement Agreement* and the *Accession Agreement* and agreed to waive the period for responding to all arbitration claims made by the Applicant, the time limit for service, and the right to designate arbitrators. The Arbitration Tribunal accepted the above application on January 31, 2024, and listed them as the Respondents in this Case. None of the other Parties raised any objections to this.

26. Now this Case has been concluded. The Arbitration Tribunal hereby, based on the written materials provided by the Parties and the facts ascertained, in accordance with relevant laws, Arbitration Rules and the *Settlement Agreement* between the two Parties, legally made this Arbitration Award after deliberation.

## III. Facts and Relevant Contractual Agreements of the Case

27. The Applicant, Respondents I&II signed three *Loan Contracts* respectively on March 23, 2021, August 25, 2021, and December 15, 2021, stipulating that the Respondent I borrowed (CNY, noted by the Arbitration Tribunal) 80,000,000.00, 25,000,000.00, and 20,000,000.00 respectively from the Applicant.

28. The Applicant signed three *Repurchase Agreement Regarding Certus Stock Income Rights Between Wang Xiangrong & Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.* (hereinafter collectively referred to as the '*Income Rights Transfer Agreements*') with the Respondents I&II on March 30, 2021, September 6, 2021, and December 20, 2021. It is agreed that the Respondent I shall transfer the stock income rights attached to part of the shares of Certus Information Technology held by the Respondent I to the Applicant. The total consideration for each transfer is CNY 80,000,000.00, CNY 25,000,000.00, CNY 20,000,000.00. The total consideration under each *Income Rights Transfer Agreement* shall be offset against the loans specified in the three corresponding *Loan Contracts*. The Applicant shall have the right to demand that the Respondent I repurchase all or part of the transferred objects, with details to be agreed through subsequent negotiations.

29. On the same day when the Applicant signed the above three *Income Rights Transfer Agreements* respectively, the Applicant signed the Subject Contracts of this Case with the Respondents I&II. All these Subject Contracts stipulate that the Applicant and the Respondent I agree to set a 18-month Observation Period respectively starting from the date of signing each Subject Contract. The Applicant shall have the right, at any time after the expiration of the Observation Period, to demand the Respondent I to repurchase all the transferred objects held by the Applicant under the *Income Rights Transfer Agreement* by serving a written notice

to the Respondent I.

30. Each *Income Rights Transfer Agreement* and the Subject Contracts in this Case stipulate that the Respondent II shall provide unlimited joint and several guarantee for all obligations and liabilities borne by the Respondent I under all the above agreements, including but not limited to payment obligations for the income from the target shares, repurchase obligations of the transferred objects, liability for breach of contract, and any other obligations arising hereunder.

31. On August 14, 2023, the Applicant sent the *Notice Letter on Demanding Payment of Repurchase Consideration* to the Respondents I&II by express delivery and email, demanding that the Respondent I fulfill the repurchase obligation and pay the full repurchase consideration of CNY 152,143,835.62 (provisionally calculated up to August 14, 2023); the Respondent II bear unlimited joint and several guarantee.

## IV. Requests and Claims of the Parties

(I) Claims of the Applicant

    1. Arbitration Claims of the Applicant

32. Arbitration Claims of the Applicant:

(1) The Respondent I shall immediately pay the repurchase consideration of CNY 152,280,821.92 to the Applicant (provisionally calculated up to August 18, 2023), and pay the full repurchase consideration based on the principal of CNY 125,000,000.00 at an annual interest rate of 10% from August 19, 2023 until the Respondent I has fully paid the repurchase consideration.

(2) The Respondent I shall immediately pay the Applicant an penalty payment of CNY 456,842.47 (provisionally calculated up to August 21, 2023), and pay the entire late fee at a rate of 1‰/day based on the full repurchase consideration from August 22, 2023 until the Respondent I has paid the full repurchase consideration.

(3) The Respondent I shall immediately compensate the Applicant for the losses (legal expenses of CNY 1,748,000.00 and guarantee fees of CNY 85,013.87) totaling CNY 1,833,013.87;

(4) The Respondent II shall provide unlimited joint and several guarantee for all the above debts (1), (2), and (3) borne by the Respondent I.

(5) The Respondents I&II shall jointly bear the arbitration fee and preservation fee of CNY 5,000.

2. Factual and Legal Basis of the Applicant for Arbitration

33. The Applicant claimed that he signed three *Loan Contracts* with the Respondents I&II respectively on March 23, 2021, August 25, 2021, and December 15, 2021, stipulating that the Respondent I borrowed CNY 80,000,000.00, CNY 25,000,000.00, and CNY 20,000,000.00 from the Applicant respectively. The Applicant and the Respondents I&II signed three *Income Rights Transfer Agreements* respectively on March 30, 2021, September 6, 2021, and December 20, 2021, stipulating that Respondent I shall transfer the stock income rights attached to part of the shares of Certus Information Technology held by the Respondent I to the Applicant. The total consideration for each transfer is CNY 80,000,000.00, CNY 25,000,000.00, CNY 20,000,000.00.The total consideration under each *Income Rights Transfer Agreement* shall be offset against the loans specified in the three corresponding *Loan Contracts*. On the same day, the Applicant also signed the Subject Contracts in this Case with the Respondents I&II.

34. Besides, the Applicant and the Respondent I agree to set a 18-month Observation Period respectively starting from the date of signing each Subject Contract. The Applicant shall have the right, at any time after the expiration of the Observation Period, to demand the Respondent I to repurchase all the transferred objects held by the Applicant under the *Income Rights Transfer Agreement* by serving a written notice to the Respondent I.

35. The Respondent II shall bear unlimited joint and several guarantee for all the obligations and liabilities borne by the Respondent I under the above agreements, including but not limited to payment obligations for the income from the target shares, repurchase obligations of the transferred objects, liability for breach of contract, and any other obligations arising hereunder.

36. The Observation Periods stipulated in each of the Subject Contracts in this Case have all expired, and the Applicant already sent written notices to both Respondents I&II, demanding the payment of the repurchase consideration. However, the Respondent I has not fulfilled the contractual obligation to pay the repurchase consideration to this date, and the Respondent II has also failed to fulfill the contractual guarantee obligation as agreed.

(II) Defense of the Respondents

37. The Respondents did not submit a written defense in response to the Applicant's above arbitration claims.

(III) Evidence Provided by the Parties

    1. Evidence of the Applicant

38. The Applicant hereby submitted the following evidence to substantiate the arbitration claims:

Evidence 1: the *Loan Contract* signed on March 23, 2021 (1st);

Evidence 2: the *Loan Contract* signed on August 25, 2021 (2nd);

Evidence 3: the *Loan Contract* signed on December 15, 2021 (3rd);

Evidence 4: Payment Vouchers;

Evidence 5: the *Transfer Agreement Regarding Certus Stock Income Rights* ('*Income Rights Transfer Agreement*') signed on March 30, 2021 (1st);

Evidence 6: the *Repurchase Agreement Regarding Certus Stock Income Rights* ('*Income Rights Repurchase Agreement*') signed on March 30, 2021 (1st);

Evidence 7: *the Supplementary Agreement for the Transfer Agreement Regarding Certus Stock Income Rights* ('*Supplementary Agreement*') signed on April 7, 2021 ;

Evidence 8: the *Transfer Agreement Regarding Certus Stock Income Rights* ('*Income Rights Transfer Agreement*') signed on September 6, 2021 (2nd);

Evidence 9: the *Repurchase Agreement Regarding Certus Stock Income Rights* ('*Income Rights Repurchase Agreement*') signed on September 6, 2021 (2nd);

Evidence 10: the *Transfer Agreement Regarding Certus Stock Income Rights* ('*Income Rights Transfer Agreement*') signed on December 20, 2021 (3rd);

Evidence 11: the *Repurchase Agreement Regarding Certus Stock Income Rights* ('*Income Rights Repurchase Agreement*') signed on December 20, 2021 (3rd);

Evidence 12: the *Notice Letter on Demanding Payment of Repurchase Consideration*and its delivery records

Evidence 13: the *Lawyer's Agency Contract*

Evidence 14: the Guarantee Fee Payment Vouchers

Evidence 15: the Preservation Fee Payment Receipts

Evidence 16: Official Receipts for Preservation Fee

2. Evidence of the Respondents

39. In this Case, the Respondents did not submit any evidence.

## V. Opinions of the Arbitration Tribunal

40. Based on all the materials of this Case and the *Settlement Agreement* signed by the Parties, the Arbitration Tribunal, in accordance with the relevant laws and arbitration rules, and taking in account the hearing of this Case, hereby presents the following opinions:

41. The Arbitration Tribunal believes, the Subject Contracts, the *Settlement Agreement*, and the *Accession Agreement* in this Case presents true intentions of the Parties. Their contents neither violate mandatory laws and administrative regulations with legal effect nor infringe upon others' legitimate rights and interests. The Tribunal respects the validity of these Agreements. The Settlement Agreement shall be legally binding upon both the Applicant and the Respondents once signed by the Parties.

42. Given that the Parties have reached an agreement on the Applicant's relevant arbitration claims and requested the Arbitration Tribunal to prepare the Arbitration Award based on the *Settlement Agreement*, therefore, the Arbitration Tribunal believes that for the Applicant's arbitration claims regarding the repurchase consideration and related losses, the Arbitration Tribunal agrees to support them according to the amounts confirmed by the Parties in the *Settlement Agreement*; for the arbitration claims waived by the Applicant, the Arbitration Tribunal respects the Applicant's own disposition of such claims in the *Settlement Agreement* and does not support them; for the Applicant's arbitration claims regarding the arbitration expenses and preservation fees of this Case, the Arbitration Tribunal respects and adopts the agreement in the *Settlement Agreement* that the Respondents shall bear all these fees; for the debt accession and penalty payment of the Respondents III, IV, & V, the Arbitration Tribunal also respects and adopts the agreement in the *Settlement Agreement*.

43. Both Parties agreed in the *Settlement Agreement* as follows:

'Article I: Party B (i.e. the Respondent 1, the same below, noted by the Arbitration

Tribunal), Party C (i.e. the Respondent II, the same below, noted by the Arbitration Tribunal), Party D (i.e. the Respondent III, the same below, noted by the Arbitration Tribunal), Party E (i.e. the Respondent IV, the same below, noted by the Arbitration Tribunal), and Party F (i.e. the Respondent V, the same below, noted by the Arbitration Tribunal) have no objection to all the arbitration claims made by Party A (i.e. the Applicant, the same below, noted by the Arbitration Tribunal) in this Case. Moreover, Party D, Party E, and Party F voluntarily agree to immediately join as co-obligors for the debts of Party B and Party C corresponding to all the arbitration claims made by Party A in this Case. That is to say, Party B, Party C, Party D, Party E, and Party F promise as follows:

(I) Party B, Party C, Party D, Party E, and Party F agree to immediately and jointly pay to Party A the repurchase consideration of CNY 152,280,821.92 (provisionally calculated up to August 18, 2023) and all the repurchase consideration based on CNY 125,000,000.00 at an annual interest rate of 10% from August 19, 2023 until their full repayment of the repurchase consideration.

(II) Party B, Party C, Party D, Party E, and Party F agree to immediately and jointly pay to Party A an penalty payment of CNY 456,842.47 (provisionally calculated up to August 21, 2023) and all the penalty payment based on the total repurchase consideration at a rate of 1‰/day from August 22, 2023 until their full repayment of the repurchase consideration.

(III) Party B, Party C, Party D, Party E, and Party F agree to immediately and jointly pay to compensate for Party A's losses (legal expenses of CNY 1,748,000.00 and guarantee fees of CNY 85,013.87) totaling CNY 1,833,013.87.

(IV) The arbitration fee (CNY 30,963.26) and the preservation fee of CNY 5,000.00 of the Case (2023) JZAZ No. 06963 heard by Beijing Arbitration Commission shall be borne by Party B, Party C, Party D, Party E, and Party F.

After this Agreement comes into effect, Party A agrees to waive the arbitration claim (2) in the arbitration case of Case (2023) JZAZ No. 06963.

Article II Party B, Party C, Party D, Party E, and Party F promise to fulfill the obligations stipulated in the Article I of this Agreement, including the payment of the repurchase consideration, the compensation for losses, arbitration fees, and

preservation fees before April 30, 2024. Through consultation among all Parties, it has been confirmed that Party B, Party C, Party D, Party E, and Party F should jointly pay to Party A a total amount of CNY 162,577,196.31 before April 30, 2024, including the total repurchase consideration of CNY 159,808,219.18, the compensation for losses of CNY 1,833,013.87, and the arbitration fee and preservation fee totaling CNY 935,963.26.

Party B, Party C, Party D, Party E, and Party F promise to jointly fulfill the above-mentioned payment obligations to Party A in installments as follows:

(I) Before February 25, 2024, to repay the principal of CNY 45,000,000 (corresponding to the principal of CNY 25,000,000.00 on September 6, 2021 and CNY 20,000,000.00 on December 20, 2021), and pay interest of CNY 10,545,205.48, totaling CNY 55,545,205.48;

(II) Before March 29, 2024, to repay the principal of CNY 50,000,000 (corresponding to a portion of the principal of CNY 80,000,000.00 on March 30, 2021), and pay interest of CNY 15,000,000.00, totaling CNY 65,000,000.00;

(III) Before April 30, 2024, to repay the principal of CNY 30,000,000 (corresponding to the remaining part of the principal of CNY 80,000,000.00 on March 30, 2021), and pay interest of CNY 9,263,013.70; totaling CNY 39,263,013.70.

The above installment payments amount to a principal of CNY 125,000,000.00 and interest of CNY 34,808,219.18, totaling CNY 159,808,219.18.

(IV) Before April 30, 2024, to compensate losses of CNY 1,833,013.87, and pay the arbitration fee and preservation fee of CNY 935,963.26, totaling CNY 2,768,977.13. (Party A agrees that after Party B, Party C, Party D, Party E, and Party F have jointly and fully repaid of the total principal and interest of CNY 159,808,219.18, the loss amount may be partially waived after mutual consultation among all Parties.)

Article III If Party B, Party C, Party D, Party E, and Party F fail to fulfill any of the obligations or commitments stipulated in this Agreement, Party B, Party C, Party D, Party E, and Party F shall immediately and jointly pay to Party A the full amount of all arbitration claims made by Party A in this Case, except for the arbitration claim

(2), and shall also jointly pay Party A an additional CNY [10,000,000.00] as a penalty payment for breach of contract. Moreover, Party A shall have the right to apply to the People's Court for compulsory execution of all the outstanding payments of Party B, Party C, Party D, Party E, and Party F. If Party B, Party C, Party D, Party E, and Party F violate any of the obligations or commitments of this Agreement, and Party A fails to directly apply to the People's Court for compulsory execution of the corresponding obligations/debts as stipulated in this Agreement and the Arbitration Award based thereon, Party A shall still have the right to apply to the Beijing Arbitration Commission for arbitration under this Agreement, and Party B, Party C, Party D, Party E, and Party F shall jointly and severally bear the liability for breach, including immediately jointly compensating Party A for all losses (including but not limited to direct losses, losses of expected benefits, arbitration/litigation fees, lawyer fees, preservation fee, guarantee fee, travel expenses, and, other expenses for realizing the creditor rights).

As Party D voluntarily provides a pledge guarantee with 100% of the equity of Dongyang Certus Communication Equipment Co., Ltd. under its name to ensure the realization of all the creditor rights of Party A in this Case, Party A shall have priority of compensation for the discounted, auctioned, or sold price of 100% equity of Dongyang Certus Communication Equipment Co., Ltd. under Party D's name. Besides, Party A may simultaneously demand that any other Party under this Agreement assume the guarantee/equity pledge guarantee responsibility or fulfill the debt.

Article IV All Parties agree that the Beijing Arbitration Commission shall prepare Arbitration Award based on the this *Settlement Agreement* (its specific title shall be subject to the legal document issued by the Beijing Arbitration Commission, and the specific ruling items shall be subject to the annexes of this Agreement). All the expenses incurred therefrom shall be borne by Party B, Party C, Party D, Party E, and Party F.

Article V Party A agrees that, once the Arbitration Tribunal of this Case formally approves that Party D, Party E, and Party F can be included as the Respondents in this Arbitration, and Party D, in accordance with the *Arbitration Agreement and*

*Debt Joinder Agreement* signed with the other Parties of this Agreement, pledges the 100% equity of Dongyang Certus Communication Equipment Co., Ltd. held by Party D to Party A; after the registration of the equity pledge, within 2 business days after the Beijing Arbitration Commission makes the Arbitration Award for the settlement of this Case, Party A shall submit an application to the Beijing Arbitration Commission and the Nanjing Intermediate People's Court to lift the preservation of the properties under the name of Party B. If Party A fails to submit the application to lift the preservation as agreed in this clause on time, Party A shall bear a penalty payment of CNY [10,000,000.00]. This penalty amount shall be deducted from the amounts that Party B, Party C, Party D, Party E, and Party F are obligated to pay under Article II this Agreement. Subsequently, the Parties shall negotiate to decide whether to lift the preservation measures of Party A on the remaining properties of Party C.

Article VI Unless otherwise as specified by laws or by administrative or judicial authorities, Party B, Party C, Party D, Party E, and Party F shall not disclose this Agreement to any third party without the written consent of Party A.

Article VII This Agreement shall come into effect on the date specified in the Agreement after it is signed or sealed by all Parties. However, at the moment any Party signs this Agreement, it shall be deemed as a commitment by that Party shall fulfill the obligations stipulated in this Agreement.

Without the consent of Party A, after the Agreement takes effect, neither Party shall unilaterally terminate or rescind this Agreement.

Any supplements or alterations to this Agreement shall be negotiated separately by all Parties, and shall only come into effect after a written agreement on the supplementary or altered matters is jointly signed by all Parties. However, if the amendments only involve the supplementation or alteration of the rights and obligations of specific Parties in this Agreement, only the specific Parties need to reach a written agreement among themselves.

For matters not covered in this Agreement, all Parties may sign a supplementary

agreement separately. This supplementary agreement shall be an integral part of this Agreement. If this Agreement is terminated or dissolved, it will not affect the right of the Party A to request the Party B, Party C, Party D, Party E, and Party F to bear the liability for breach.

Without the written consent of the Party A, the Party B, Party C, Party D, Party E, and Party F shall not transfer all or part of their rights and obligations under this Agreement.

Article VIII The formation, validity, interpretation, performance, and resolution of disputes under this Agreement shall be governed and interpreted by laws of China.

Article IX Party B, Party C, Party D, Party E, and Party F promise that their contact information will remain unchanged. Any notice sent by Party A to any of Party B, Party C, Party D, Party E, or Party F is able to be delivered to any place of residence/contact number/social platform account bound to the contact number noted in this Agreement by Party B, Party C, Party D, Party E, or Party F. And it shall be deemed to have been delivered upon Party A' service by personal delivery/post/text message/email/Apps, etc.

Article X The term 'CNY' in this Agreement refers to the Chinese yuan. The term 'Written' as used in this Agreement means any form of non-verbal communication that is delivered in means such as post, email, Apps (e.g. WeChat, DingTalk, etc.), etc. and can directly present readable content on the relevant carriers.

This Agreement shall be written in Chinese and made in seven copies, with each party holding one copy, and the last one submitted to the Beijing Arbitration Commission. The Arbitration Tribunal of this Case will issue an Arbitration Award based on this Settlement Agreement. Each copy shall assume equal legal effect.

This Settlement Agreement was signed in Qiantang District, Hangzhou City.'

44. The Parties also reached an agreement on the main items in the *Settlement Agreement* regarding the application for a settlement award in this Case:

'I. The Respondents, Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd., LIJUN LU, Dongyang Certus Information Technology Co., Ltd., Xingtai Certus Information Technology Co., Ltd., and MEI WANG, shall jointly pay the Applicant Wang Xiangrong the repurchase consideration of CNY 159,808,219.18. The repurchase consideration shall be paid in three installments. The first installment of CNY 55,545,205.48 shall be paid before February 25, 2024, the second installment of CNY 65,000,000.00 shall be paid before March 29, 2024, and the third installment of CNY 39,263,013.70 shall be paid before April 30, 2024;

II. The Respondents, Xuzhou Huamei Qiyue Enterprise Management Consulting Co., LTD., LIJUN LU, Dongyang Certus Information Technology Co., Ltd., Xingtai Certus Information Technology Co., Ltd., and MET WANG shall jointly compensate the Applicant Wang Xiangrong for the losses of CNY 1,833,013.87 before April 30, 2024;

III. The Arbitration fee and preservation fee of this Case, totaling CNY 935,963.26, shall be borne by the Respondents, Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd., LIJUN LU, Dongyang Certus Information Technology Co., Ltd., Xingtai Certus Information Technology Co., Ltd., and MET WANG, which shall be directly paid to the Applicant Wang Xiangrong before April 30, 2024;

IV. If the Respondents, Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd., LIJUN LU, Dongyang Certus Information Technology Co., Ltd., Xingtai Certus Information Technology Co., Ltd., and MEI WANG, fail to fulfill any of the above payment obligations on time and in full, they shall immediately and jointly pay the outstanding total repurchase consideration of CNY 152,280,821.92 to the Applicant Wang Xiangrong [provisionally calculated up to August 18, 2023; thereafter it shall be calculated based on a principal of CNY 125,000,000.00 at an annual interest rate of 10%, until all the repurchase consideration is fully paid by the Respondents, Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd., LIJUN LU, Dongyang Certus Information Technology Co., Ltd., Xingtai Certus Information Technology Co., Ltd., and MEI WANG], the compensation for losses of CNY 1,833,013.87, and a penalty payment of CNY 10,000,000.00.

18 / 23

Moreover, the Applicant Wang Xiangrong shall have the right to apply to the People's Court for compulsory execution of all the outstanding amounts of the Respondents, Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd., LIJUN LU, Dongyang Certus Information Technology Co., Ltd., Xingtai Certus Information Technology Co., Ltd., and MEI WANG;

V. Other arbitration claims voluntarily waived by the Applicant Wang Xiangrong.'

45. In summary, the Arbitration Tribunal believes that these five Respondents shall pay the Applicant the following amounts within the specified timeframes:

46. The five Respondents shall jointly pay the repurchase consideration of CNY 159,808,219.18 to the Applicant, which shall be paid in three installments. The first installment of CNY 55,545,205.48 shall be paid before February 25, 2024, the second installment of CNY 65,000,000.00 shall be paid before March 29, 2024, and the third installment of CNY 39,263,013.70 shall be paid before April 30, 2024.

47. The five Respondents shall jointly compensate the Applicant for the losses of CNY 1,833,013.87 before April 30, 2024.

48. The five Respondents shall jointly pay the Applicant the arbitration fee and preservation fee of this Case totaling CNY 935,963.26 before April 30, 2024.

49. If any of the five Respondents fail to fulfill any of the above payment obligations on time and in full, they shall immediately and jointly pay the outstanding total repurchase consideration of CNY 152,280,821.92 (provisionally calculated up to August 18, 2023; thereafter it shall be calculated based on a principal of CNY 125,000,000.00 at an annual interest rate of 10%, from August 19, 2023 until the full repurchase consideration is paid by the Respondents),the compensation for losses of CNY 1,833,013.87, and a penalty payment of CNY 10,000,000.00. Moreover, the Applicant shall have the right to apply to the People's Court for compulsory execution of all the above outstanding amounts of the five Respondents.

## VI. Arbitration

50. Based on the above analyses and deliberations, the Arbitration Tribunal has finally ruled as follows:

(I) The five Respondents shall jointly pay the repurchase consideration of CNY 159,808,219.18 to the Applicant in three installments. The payment time and amount for each installment are as follows:

(1) The five Respondents shall pay the first installment of CNY 55,545,205.48 to the Applicant before February 25, 2024;

(2) The five Respondents shall pay the second installment of CNY 65,000,000.00 to the Applicant before March 29, 2024;

(3) The five Respondents shall pay the third installment of CNY 39,263,013.70 to the Applicant before April 30, 2024;

(II) The five Respondents shall jointly compensate the Applicant for losses of CNY 1,833,013.87 before April 30, 2024;

(III) The arbitration fee of this Case is CNY 930,963.26 (including the Arbitrators' remuneration of CNY 529,811.90 and the institution's fee of CNY 401,151.36, which has been fully prepaid by the Applicant to this Commission), and the preservation fee is CNY 5,000, totaling CNY 935,963.26, which shall be fully borne by the five Respondents. The five Respondents shall directly pay the arbitration fee and preservation fee totaling CNY 935,963.26 to the Applicant before April 30, 2024;

(IV) If the five Respondents fail to fulfill any of the above payment obligations in full and on time, they shall immediately jointly pay the outstanding repurchase consideration of CNY 152,280,821.92 to the Applicant (provisionally calculated up to August 18, 2023; thereafter it shall be calculated based on the principal of CNY 125,000,000.00 at an annual interest rate of 10%, from August 19, 2023 until the full repurchase consideration is paid by the five Respondents), the compensation for the losses of CNY 1,833,013.87, and a penalty payment of CNY 10,000,000.00. Moreover, the Applicant shall have the right to apply to the People's Court for compulsory execution of all the above outstanding amounts of the five Respondents;

(V) Other arbitration claims waived by the Applicant.

51. This Award is final and shall come into effect upon its issuance.


Cui Haiyan (Signature)

Cui Haiyan

(the Arbitrator)


Mo Limei (Signature)

Mo Limei

(the Arbitrator)


Tao Jingzhou (Signature)

Tao Jingzhou

(the Chief Arbitrator)


Beijing International Arbitration Center (Seal)

Beijing Arbitration Commission/Beijing International Arbitration Center

# 公　证　书

(2025)浙温证字第 4588 号

申请人：王相荣，男，一九七二年二月二十二日出生，公民身份号码：330106197202220012。

公证事项：仲裁裁决书

兹证明北京仲裁委员会/北京国际仲裁中心于二〇二四年二月五日作出的（2023）京仲案字第 06963 号《仲裁裁决书》的原本与前面的复印件相符，原件属实。

中华人民共和国浙江省温岭市公证处

公证员　　

二〇二五年六月十九日

LI34903066

# NOTARIAL CERTIFICATE

(Translation)

(2025) ZWZZ No. 4588

Applicant: Wang Xiangrong, male, born on February 22, 1972, ID Card No. 330106197202220012.

Issue under Notarization: Arbitration Award

This is to certify that the foregoing copy conforms to the original of Arbitration Award (2023) JZAZ No. 06963 issued on February 5, 2024 by Beijing Arbitration Commission/Beijing International Arbitration Center, and that the original document is authentic.

Wenling Notary Public Office

Zhejiang Province

The People's Republic of China

Notary: Wu Jintao

June 19, 2025

LI 34903104

# 公 证 书

(2025)浙温证字第 4589 号

申请人：王相荣，男，一九七二年二月二十二日出生，公民身份号码：330106197202220012。

公证事项：译本与原本相符

兹证明前面的(2025)浙温证字第 4588 号《公证书》的英文译本内容与该公证书中文原本相符。

中华人民共和国浙江省温岭市公证处

公证员

二〇二五年六月七九日

LI34903071

# NOTARIAL CERTIFICATE

(Translation)

(2025) ZWZZ No. 4589

Applicant: Wang Xiangrong, male, born on February 22, 1972, ID Card No. 330106197202220012.

Issue under Notarization: true and exact translation

This is to certify that the attached English translation of the foregoing NOTARIAL CERTIFICATE (2025) ZWZZ No. 4588 conforms to the original document in Chinese.

Wenling Notary Public Office

Zhejiang Province

The People's Republic of China

Notary: Wu Jintao

June 19, 2025

L134903105



本附加证明书仅证明公文书上的签名、签署人签名时的身份，需要时可证明公文书上的印鉴属实。附加证明书不对公文书内容予以证明。
This Apostille only certifies the authenticity of the signature, the capacity of the person who has signed the public document and, where appropriate, the identity of the seal or stamp which the public document bears. This Apostille does not certify the content of the document for which it was issued.
Visit https://consular.mfa.gov.cn/VERIFY/ and scan the QR code to verify the issuance of this Apostille

**12484577**



## 附 加 证 明 书
### APOSTILLE
(1961年10月5日海牙公约)
(Convention de La Haye du 5 octobre 1961)

1. 文书出具国：　中华人民共和国
   Country:　　　People's Republic of China

本公文书 This public document

2. 签署人　　　吴锦涛
   has been　　　Wu Jintao
   signed by

3. 签署人身份　公证员
   acting in the　Notary Public
   capacity of

4. 印鉴名称　　浙江省温岭市公证处
   bears the　　Wenling Notary Public Office,Zhejiang Province
   seal/stamp of

证明 Certified

5. 签发地　杭州　　　　　　　　　　6. 签发日期　2025年07月15日
   at　　　Hangzhou　　　　　　　　　the　　　July 15,2025

7. 签发人　蒋岚/Jiang Lan
   by　　　浙江省外事办公室
   　　　　Foreign Affairs Office of Zhejiang Province

8. 附加证明书编号　认字第253300060824号
   No

9. 签发机关印鉴：　　　　　10. 签名：
   Seal/Stamp:　　　　　　　Signature:





# Exhibit B



国家：美国

25041908-S E A M

台-温岭

# 公 证 书

中华人民共和国浙江省温岭市公证处

000037

（2023）京仲案字第06963 号 仲裁协议暨债务加入协议

北京仲裁委员会
复印材料专用章
（  ）京仲案字  号复印于  年 月 日

**（2023）京仲案字第06963号案件**

**仲裁协议暨债务加入协议**

本协议由下列各方于 2024 年 1 月 19 日在杭州市钱塘区签署：

本件与原件核对无误

甲方：王相荣

住所地：浙江省温岭市城西街道保塔路1号开元山庄豪庭苑62幢1号101室

居住地：浙江省杭州市钱塘区世茂广场2幢1单元1203室

联系地址：浙江省杭州市西湖区杭大路1号A座11楼



乙方：徐州华美琦悦企业管理咨询有限公司

住所地：江苏省徐州市丰县王沟镇工业园区12号

联系地址：江苏省南京市玄武区玄武大道699号-22号18幢

法定代表人（负责人）：逯利军  职务：董事长

联系电话：19800177001（逯利军）/13681958151（联系人张春源）

丙方：LIJUN LU（逯利军）

联系地址：江苏省南京市玄武区玄武大道699号-22号18幢

美国护照号：548446178

外国人永久居留身份证号：USA320168031703

联系电话：19800177001（逯利军）/13681958151（联系人张春源）



丁方：东阳赛特斯信息科技有限公司

住所地：浙江省金华市东阳市南市街道五一工业功能区

联系地址：江苏省南京市玄武区玄武大道699号-22号18幢

法定代表人（负责人）：逯利军  职务：执行董事兼经理

联系电话：19800177001（逯利军）/13681958151（联系人张春源）

000038

（2023）京仲案了第06963号 仲裁协议暨债务加入协议

戊方：邢台赛特斯信息科技有限公司

住所地：河北省邢台市邢东新区固博园花雨巷C3

联系地址：江苏省南京市玄武区玄武大道699号-22号18幢

法定代表人（负责人）：逯利军  职务：执行董事兼经理

联系电话：19800177001（逯利军）/13681958151（联系人张春源）

庚方：MEI WANG（王梅）

联系地址：江苏省南京市玄武区玄武大道699号-22号18幢

美国护照号：548446177

外国人永久居留身份证号：USA320168053002

联系电话：19800177001（逯利军）/13681958151（联系人张春源）

上述任一方单称为"一方"，合称为"各方"。

本协议各方在北京仲裁委员会（2023）京仲案字第06963号仲裁案（或称"本案"）受理过程中，达成本仲裁协议暨债务加入协议（下称"本协议"），以资共同遵守。

第一条  各方同意，各方因本协议引起的或与北京仲裁委员会（2023）京仲案字第06963号案有关的任何纠纷，均提请北京仲裁委员会按照其仲裁规则进行仲裁，并由（2023）京仲案字第06963号案仲裁庭处理。

丁方、戊方、庚方同意作为被申请人加入本案仲裁，认可本案的组庭情况，并自愿放弃答辩期、送达期限和选定仲裁员的权利。各方同意，追加丁方、戊方、庚方为本案仲裁的被申请人。

第二条  各方认可，乙方、丙方履行本案甲方全部仲裁请求对应债务的期限均已届满，并且认可甲方已向北京仲裁委员会提交的本案《仲裁申请书》（详见附件一）中的全部仲裁请求应予全部支持。

000039

（2023）京仲案字第 06963 号 仲裁协议暨债务加入协议

第三条　丁方、戊方、庚方分别承诺，自愿立即加入本案甲方全部仲裁请求对应的乙方、丙方债务，即：丁方、戊方、庚方均同意自愿立即加入甲方与乙方、丙方于 2021 年 3 月 23 日签署的《借款合同》、2021 年 8 月 25 日签署的《借款合同》、2021 年 12 月 15 日《借款合同》以及 2021 年 3 月 30 日签署的《关于赛特斯股票收益权的转让协议》《关于赛特斯股票收益权的回购协议》、2021 年 4 月 7 日签署的《关于赛特斯股票收益权的回购协议之补充协议》、2021 年 9 月 6 日签署的《关于赛特斯股票收益权的转让协议》《关于赛特斯股票收益权的回购协议》、2021 年 12 月 20 日签署的《关于赛特斯股票收益权的转让协议》《关于赛特斯股票收益权的回购协议》所涉的乙方、丙方应向甲方履行的各项责任与义务（下称"标的债务"，上述各份协议详见附件二），与乙方、丙方共同承担上述债务，并认可上述债务的金额以甲方已向北京仲裁委员会提交的本案《仲裁申请书》中的全部仲裁请求金额为准。

第四条　丁方同意在加入标的债务的基础上，同时另行以其持有的【东阳赛特斯通信设备有限公司】100%股权（认缴出资额 5000 万元）（下称"标的股权"）向甲方提供质押担保，对标的债务（即对应甲方主债权）及其实现债权费用（包括但不限于利息、逾期利息、罚息、违约金、损害赔偿金以及鉴定费、评估费、拍卖费、诉讼费、仲裁费、公证费、律师费等甲方为实现债权而发生的合理费用）的履行承担无限连带担保责任。甲方有权同时要求丁方或乙方、丙方、戊方、庚方及其他第三方承担对标的债务的履行义务或保证责任，也可主张同时通过丁方另行提供的股权质押担保实现甲方债权。

各方应于相关《股权质押协议》签订之日起【2】日内共同到相关行政机关办理完成标的股权的股权质押登记，乙方、丙方、丁方、戊方、庚方应将标的股权的全部相关权利凭证原件及行政机关登记相关文件全部及时交付甲方。

本条所述的标的股权质押事宜与各方另行签订的《股权质押协议》有冲突的，以各方另行签订的《股权质押协议》约定为准。

第五条　乙方、丙方、丁方、戊方、庚方承诺，联系方式不予变动，甲方向乙方、丙方、丁方、戊方、庚方任何一方发出的通知可送达至乙方、丙方、丁方、戊方、庚方在本协议中注明的住所地/联系电话/联系电话绑定的社交平台账号任

3／81

000010

（2023）京仲案字第 06963 号 仲裁协议暨债务加入协议

何一处即可，且自甲方当面递交或交邮或通过短信/电子邮件/应用程序等发出时视为送达。

第六条　本协议于各方签字或盖章之日后于本协议约定的签署日期生效，但任何一方自签署本协议时起即视为向相对方承诺履行本协议约定的义务。

未经甲方同意，协议生效后，任何一方不得擅自解除、终止本协议。

本协议的任何补充、变更应经各方另行协商，并就补充、变更事项共同签署书面协议后方可生效，但其中仅涉及补充或变更本协议特定方权利义务的，仅需此等特定方之间达成书面形式约定。

本协议未尽事宜，各方可另行签署补充协议，该补充协议与本协议是一个不可分割的整体。本协议被终止/解除的，不影响甲方要求乙方、丙方、丁方、戊方、庚方承担违约责任的权利。

未经甲方书面同意，乙方、丙方、丁方、戊方、庚方不得转让其在本协议项下全部和/或部分的权利/义务。

第七条　本协议的订立、效力、解释、履行和争议的解决应受中国法律的管辖，并依其解释。

第八条　本协议所称"元"，均指人民币元。本协议所称"书面"，均指以邮件、电子邮件、应用程序（如微信、钉钉等）等途径送达的、能够借助相关载体直接体现可阅读内容的非口头形式。

本协议用中文书写，一式七份，各方各持一份，余一份交给北京仲裁委员会，各份均具有同等法律效力。

本协议签订于杭州市钱塘区。

（以下无正文，为签署页及附件）

000011

（2023）京仲案字第 06963 号 仲裁协议暨债务加入协议

（本页无正文，为《（2023）京仲案字第 06963 号仲裁协议暨债务加入协议》签
署页）

甲方：王相荣

000042

（本页无正文，为《（2023）京仲案字第 06963 号案件仲裁协议暨债务加入协议》
签署页）



乙方：徐州华美琦悦企业管理咨询有限公司

丙方：LIJUN LU（逯利军）

000043

（本页无正文，为《（2023）京仲案字第 06963 号案件仲裁协议暨债务加入协议》签署页）

丁方：东阳赛特斯信息科技有限公司

000014

（2023）京仲案字第 06963 号 仲裁协议暨债务加入协议

（本页无正文，为《（2023）京仲案字第 06963 号案件仲裁协议暨债务加入协议》
签署页）



戊方：邢台赛特斯信息科技有限公司

000045

（本页无正文，为《（2023）京仲案字第 06963 号案件仲裁协议暨债务加入协议》签署页）

庚方：MEI WANG（王梅）

徐州华美琦悦企业管理咨询有限公司、LIJUN LU（逯利军）、东阳赛特斯信息科技有限公司、邢台赛特斯信息科技有限公司、MEI WANG（王梅）共同授权的仲裁代理人签字：

000070

王相荣

与

徐州华美琦悦企业管理咨询有限公司

关于赛特斯股票收益权的

回购协议



2021 年 3 月 30 日

000071

甲方：王相荣

身份证号：330106197202220012

住址：浙江省温岭市太平街道瓦屿山路7号


乙方：徐州华美琦悦企业管理咨询有限公司

注册地：江苏省徐州市丰县王沟镇工业园区12号

法定代表人：LIJUN LU（逯利军）


丙方：LIJUN LU（逯利军）

美国护照号：548446178

住址：南京市玄武区玄武大道699-22号18栋

鉴于：

甲乙双方于2021年3月30日签署了《王相荣与徐州华美琦悦企业管理咨询有限公司关于赛特斯股票收益权的转让协议》（以下简称《收益权转让协议》）。为进一步明确《收益权转让协议》中约定的"转让标的的回购"的具体内容，双方经自愿平等协商一致，达成如下协议：

**一、定义**

除非本协议另有约定或根据本协议上下文另有其他含义，本协议与《收益权转让协议》中的相关用语和简称具有相同含义。

**二、回购安排**

鉴于双方开展《收益权转让协议》项下收益权转让交易的基础是各自对标的股票未来收益情况的预期，为降低预期偏离风险，双方一致同意设置观察期及相应回购安排如下：

1. 双方同意设置自本协议签订之日开始为期【18个月】的观察期。甲方有权在观察期届满之日起的任意时间向乙方发出书面通知，要求乙方回购甲方依据《收益权转让协议》所享有的全部转让标的，乙方应根据甲方书面通知履行回购义务；

2



000072

2.根据观察期内赛特斯公司上市进展情况，回购对价按如下两种方式之一执行（为免歧义，以下款项单位为：人民币元，并应当按照四舍五入的原则精确至个位数）：

（1）如观察期内赛特斯公司已成功上市，则回购对价按如下方式计算：

回购对价=本次交易对价（8000 万元人民币）+（双方协商一致的回购日前20 个连续交易日均价-10 元/股）*标的股票数量*80%+标的股票在双方签约至回购日期间内产生的《收益权转让协议》第一条第 2 款下"（2）~（5）"的各类收益。

（2）如至观察期满，赛特斯公司未能上市，则回购对价按如下方式计算：

回购对价=本次交易对价*（1+N/365*10%），N 为自本协议签订之日至乙方支付完毕回购价款之日的期间，单位为"天"

3.如甲方依据本协议向乙方发出回购书面通知的，乙方应于收到甲方书面通知之日起【三（3）】个工作日内，将全部回购对价支付至甲方指定银行账户。甲方指定银行账户如下：

账户名：王相荣

账号：农行浙江省温岭市石粘支行

开户行：6228 4803 6171 5380 719

4.若观察期【18 个月】届满之日前赛特斯已实现上市，甲方可选择在更早的时间点向乙方发出书面通知，要求乙方根据本协议的约定回购甲方依据《收益权转让协议》所享有的全部转让标的；

5.因履行股票回购义务需要乙方出售《收益权转让协议》约定的标的股票的，与标的股票出售有关的安排（包括但不限于出售方式、出售价格、出售时机等），由甲方与乙方友好协商，但决定权归属于甲方；

6、鉴于乙方是赛特斯的控股股东，在赛特斯上市后其持有赛特斯的股份在锁定期内不能出售，乙方同意，在赛特斯已实现上市且其持有赛特斯的股份尚处于锁定期的情况下，乙方将通过其指定的其他自然人股东减持对应数量的标的股票，以履行本协议约定的股票回购义务；

7. 乙方通过其指定的自然人股东减持标的股票而产生的有关税费，每股 10 元以内应缴纳的税费，由乙方承担；超出每股 10 元的部分应缴纳的税费，由甲方与乙方按照 80%：20%的比例分担。上述税费的具体金额按照减持时点有效的证券监管规则、税收法规和减持地的税收返还政策，计算该自然人股东的股份减持

3

36／81

**0073**

应承担的税费净额（考虑税收返还因素），以该计算结果作为甲方、乙方分担税费的基准；

8.自乙方按照本协议约定向甲方支付全部回购对价之日起，即视为转让标的及其一切权利均自动返还乙方，甲方对转让标的不再享有任何权利。

## 三、丙方的无限连带保证责任

就乙方在本协议项下应履行的各项责任与义务，丙方为其提供担保，承担无限连带保证责任，包括但不限于标的股票收入的支付义务、转让标的的回购义务、违约责任及其他任何责任及义务。

## 四、声明、陈述与保证

1. 甲方为合法设立、有效存续的合伙企业，乙方为合法设立有效存续的法人实体，双方签订本协议已按其内部程序作出有效决议并获得充分授权，均有权签署和履行本协议。

2. 双方同意，若在实际执行本协议项下各项约定之时，需另行签署其他文件以确保前述约定的履行的，双方均有义务配合对方签署前述文件，但前提是前述文件的内容不得与本协议的约定相冲突，或损害一方在本协议项下的权益和权利。

## 五、保密条款

双方应对本协议签署和履行过程中知悉的任何涉及对方的商业秘密保密，须保密的事项包括但不限于本协议的存在、本协议的任何内容以及其他与本协议相关的任何文件或信息，保密期限为永久。

## 六、违约责任

1. 除本协议另有约定以外，本协议中任何一方违反其在本协议项下的义务、责任、承诺、陈述与保证等，均构成对本协议的违反，且该方应当赔偿另一方因此所遭受的全部损失。

2. 本协议项下约定的所有违约条款均是相互独立的，即一方根据本协议的某一违约条款向另一方主张违约责任的，不影响其根据本协议的其他违约条款向违约方主张其他违约责任。

4

000074

### 七、其他

1. 本协议适用中国（为本协议之目的，不包括香港特别行政区、澳门特别行政区和台湾地区）法律。因本协议产生的、或与本协议有关的争议应首先通过协商解决；协商不成，任何一方有权提请北京仲裁委员会按照其仲裁规则进行仲裁。

2. 本协议签署和履行过程中所产生的税费，由双方各自承担。

3. 对本协议的任何修改、修订或变更，除非根据适用法律以书面形式作出并经双方或其代表签署，均为无效。

4. 甲乙双方特此确认，未经对方书面同意，任一方不得转让或出让其在本协议项下的权利或义务予任何第三方。

5. 如果本协议的任何条款被认定为全部或部分不合法或无效，该条款或其相关部分应在上述范围内被视为不构成本协议的一部分，但本协议其他条款的合法性和效力均不受影响。双方应在合理范围内尽其最大努力，以有效且可执行的替代规定来代替无效或不可执行的规定，替代规定的内容应与无效或不可执行的规定的拟定意思尽可能相近。

6. 一方未行使或延迟行使与本协议有关的任何权利、权力或救济均不构成对这些权利、权力或救济的放弃。一方单次或部分行使任何权利、权力或救济亦不应妨碍其另行行使或进一步行使该项权利、权力或救济，或行使任何其他权利、权力或救济。

7. 一方根据本协议而向另一方发出的任何通知或其他信函应以书面和中文形式做出，并以专人递送、邮寄、传真或电子邮件方式发出。一旦根据下列条款交付或寄送，即视为适当发出或送达：(I)通知以专人手递方式送达的，以收件人签收通知时为送达时间；(ii)以挂号邮寄方式送达的，则以邮件寄出后的第五（5）个工作日为送达时间；(iii)以特快专递方式送达的，则以邮件寄出后的第三（3）个工作日为送达时间；(iv)以传真方式送达的，则以传真发出之次日为送达时间；(v)以电子邮件方式送达的，以该电子邮件进入被送达人指定电子邮箱之次日为送达时间。

8. 本协议一式六份，协议各方各执两份，自各方法定代表人或授权委托人签字并加盖公章后生效。

（以下无正文，下接签字页）

5

38／81

00075

（本页无正文，为《王相荣与徐州华美琦悦企业管理咨询有限公司关于赛特斯股票收益权的回购协议》之签署页-1/3）

联系人：张旭波

联系地址：上海市中山北路 2900 号东方国际元中大厦 A 栋 13 楼

电子邮件：stevenzhang@leo.cn

联系电话：13601649601

王相荣（签字）：

8

39／81

000076



（本页无正文，为《王相荣与徐州华美琦悦企业管理咨询有限公司关于赛特斯股票收益权的回购协议》之签署页-2/3）

**徐州华美琦悦企业管理咨询有限公司（盖章）**

联系人：张春源

联系地址：南京市玄武区玄武大道 699-22 号江苏软件园 18 幢

电子邮件：zhangcy@certusnet.com.cn

联系电话：13681958151

法定代表人或授权代表（签字）：

^000077

（本页无正文，为《王相荣与徐州华美琦悦企业管理咨询有限公司关于赛特斯股票收益权的回购协议》之签署页-3/3）

联系人：张春源

联系地址：南京市玄武区玄武大道 699-22 号江苏软件园 18 幢

电子邮件：zhangcy@certusnet.com.cn

联系电话：13681958151

LIJUN LU（遽利军）（签字）：

8

41／81

000078

王相荣

与

徐州华美琦悦企业管理咨询有限公司



关于赛特斯股票收益权的

回购协议

之补充协议



2021 年 4 月 7 日

42／81

000079

甲方：王相荣

身份证号：330106197202220012

住址：浙江省温岭市太平街道瓦屿山路 7 号

乙方：徐州华美琦悦企业管理咨询有限公司

注册地：江苏省徐州市丰县王沟镇工业园区 12 号

法定代表人：LIJUN LU （逯利军）

丙方：LIJUN LU （逯利军）

美国护照号：548446178

住址：南京市玄武区玄武大道 699-22 号 18 幢

鉴于：

甲乙双方于 2021 年 3 月 30 日签署了《王相荣与徐州华美琦悦企业管理咨询有限公司关于赛特斯股票收益权的转让协议》（以下简称《收益权转让协议》）及《王相荣与徐州华美琦悦企业管理咨询有限公司关于赛特斯股票收益权的回购协议》（以下简称《收益权回购协议》）。现经甲乙丙各方自愿平等协商一致，对《收益权回购协议》有关条款进行修订，具体如下：

一、定义

除非本补充协议另有约定或根据本补充协议上下文另有其他含义，本补充协议与《收益权回购协议》中的相关用语和简称具有相同含义。

二、对《收益权回购协议》条款的修订

《收益权回购协议》第二条第二款原文为：

"2.根据观察期内赛特斯公司上市进展情况，回购对价按如下两种方式之一执行（为免歧义，以下款项单位为：人民币元，并应当按照四舍五入的原则精确至个位数）：

（1）如观察期内赛特斯公司已成功上市，则回购对价按如下方式计算：

回购对价=本次交易对价（8000 万元人民币）+（双方协商一致的回购日前 20 个连续交易日均价-10 元/股）*标的股票数量*80%+标的股票在双方签约



000030

至回购日期间内产生的《收益权转让协议》第一条第2款下"（2）～（5）"的各类收益。

（2）如至观察期满，赛特斯公司未能上市，则回购对价按如下方式计算：

回购对价=本次交易对价*（1+N/365*10%），N为自本协议签订之日至乙方支付完毕回购价款之日的期间，单位为"天"

**现修改为：**

"2.根据观察期内赛特斯公司上市进展情况，回购对价按如下两种方式之一执行（为免歧义，以下款项单位为：人民币元，并应当按照四舍五入的原则精确至个位数）：

（1）如观察期内赛特斯公司已成功上市，则回购对价按如下方式计算：

回购对价=本次交易对价（8000万元人民币）*（1+N/365*10%）+（双方协商一致的回购日前20个连续交易日均价-10元/股-每股门槛收益）*标的股票数量*80%+标的股票在双方签约至回购日期间内产生的《收益权转让协议》第一条第2款下"（2）～（5）"的各类收益；

每股门槛收益=本次交易对价*N/365*10%/标的股票数量；

N为自本协议签订之日至乙方支付完毕回购价款之日的期间，单位为"天"；

考虑到股价波动的可能性，乙方承诺，在赛特斯公司上市后，只要实施回购，回购对价均不低于本次交易对价（8000万元人民币）*（1+N/365*10%）。

（2）如至观察期满，赛特斯公司未能上市，则回购对价按如下方式计算：

回购对价=本次交易对价*（1+N/365*10%），N为自本协议签订之日至乙方支付完毕回购价款之日的期间，单位为"天""

三、各方一致同意，除本补充协议约定内容外，其他条款按《收益权回购协议》执行。

（以下无正文，下接签字页）



3

44／81

000081

（本页无正文，为《王相荣与徐州华美琦悦企业管理咨询有限公司关于赛特斯股票收益权的回购协议之补充协议》之签署页-1/3）

联系人：张旭波

联系地址：上海市中山北路 2900 号东方国际元中大厦 A 栋 13 楼

电子邮件：stevenzhang@leo.cn

联系电话：13601649601

王相荣（签字）：

45／81

000082

（本页无正文，为《王相荣与徐州华美琦悦企业管理咨询有限公司关于赛特斯股票收益权的回购协议》之签署页-2/3）

徐州华美琦悦企业管理咨询有限公司（盖章）

联系人：张春源

联系地址：南京市玄武区玄武大道 699-22 号江苏软件园 18 幢

电子邮件：zhangcy@certusnet.com.cn

联系电话：13681958151

法定代表人或授权代表（签字）：

46／81

000083

（本页无正文，为《王相荣与徐州华美琦悦企业管理咨询有限公司关于赛特斯股票收益权的回购协议》之签署页-3/3）

联系人：张春源

联系地址：南京市玄武区玄武大道 699-22 号江苏软件园 18 幢

电子邮件：zhangcy@certusnet.com.cn

联系电话：13681958151

LIJUN.LU _（逯利军）_（签字）_:

)0093

王相荣

与

徐州华美琦悦企业管理咨询有限公司

关于赛特斯股票收益权的

回购协议



2021 年 9 月 6 日

000094

甲方：王相荣

身份证号：330106197202220012

住址：浙江省温岭市太平街道瓦屿山路 7 号


乙方：徐州华美琦悦企业管理咨询有限公司

注册地：江苏省徐州市丰县王沟镇工业园区 12 号

法定代表人：LIJUN LU（逯利军）


丙方：LIJUN LU（逯利军）

美国护照号：548446178

住址：南京市玄武区玄武大道 699-22 号 18 幢


鉴于：

甲乙双方于 2021 年 9 月 6 日签署了《王相荣与徐州华美琦悦企业管理咨询有限公司关于赛特斯股票收益权的转让协议》（以下简称《收益权转让协议》）。为进一步明确《收益权转让协议》中约定的"转让标的的回购"的具体内容，双方经自愿平等协商一致，达成如下协议：

一、定义

除非本协议另有约定或根据本协议上下文另有其他含义，本协议与《收益权转让协议》中的相关用语和简称具有相同含义。

二、回购安排

鉴于双方开展《收益权转让协议》项下收益权转让交易的基础是各自对标的股票未来收益情况的预期，为降低预期偏离风险，双方一致同意设置观察期及相应回购安排如下：

1. 双方同意设置自本协议签订之日开始为期【18 个月】的观察期。甲方有权在观察期届满之日起的任意时间向乙方发出书面通知，要求乙方回购甲方依据《收益权转让协议》所享有的全部转让标的，乙方应根据甲方书面通知履行回购义务；

2

58／81

000095

2.根据观察期内赛特斯公司上市进展情况，回购对价按如下两种方式之一执行（为免歧义，以下款项单位为：人民币元，并应当按照四舍五入的原则精确至个位数）：

（1）如观察期内赛特斯公司已成功上市，则回购对价按如下方式计算：

回购对价=本次交易对价（2500万元人民币）*（1+N/365*10%）+（双方协商一致的回购日前20个连续交易日均价-9元/股-每股门槛收益）*标的股票数量+标的股票在双方签约至回购日期间内产生的《收益权转让协议》第一条第2款下"（2）~（5）"的各类收益；

每股门槛收益=本次交易对价*N/365*10%/标的股票数量；

N为自本协议签订之日至乙方支付完毕回购价款之日的期间，单位为"天"；

考虑到股价波动的可能性，乙方承诺，在赛特斯公司上市后，只要实施回购，回购对价均不低于本次交易对价（2500万元人民币）*（1+N/365*10%）。

（2）如至观察期满，赛特斯公司未能上市，则回购对价按如下方式计算：

回购对价=本次交易对价*（1+N/365*10%），N为自本协议签订之日至乙方支付完毕回购价款之日的期间，单位为"天""

3.如甲方依据本协议向乙方发出回购书面通知的，乙方应于收到甲方书面通知之日起【三（3）】个工作日内，将全部回购对价支付至甲方指定银行账户。甲方指定银行账户如下：

账户名：王相荣

账号：农行浙江省温岭市石粘支行

开户行：6228 4803 6171 5380 719

4.若观察期【18个月】届满之日前赛特斯已实现上市，甲方可选择在更早的时间点向乙方发出书面通知，要求乙方根据本协议的约定回购甲方依据《收益权转让协议》所享有的全部转让标的；

5.因履行股票回购义务需要乙方出售《收益权转让协议》约定的标的股票的，与标的股票出售有关的安排（包括但不限于出售方式、出售价格、出售时机等），由甲方与乙方友好协商，但决定权归属于甲方；

6、鉴于乙方是赛特斯的控股股东，在赛特斯上市后其持有赛特斯的股份在锁定期内不能出售，乙方同意，在赛特斯已实现上市且其持有赛特斯的股份尚处于锁

3

000096

定期的情况下，乙方将通过其指定的其他自然人股东减持对应数量的标的股票，以履行本协议约定的股票回购义务；

7. 乙方通过其指定的自然人股东减持标的股票而产生的有关税费，每股 9 元以内应缴纳的税费，由乙方承担；超出每股 9 元的部分应缴纳的税费，由甲方承担。上述税费的具体金额按照减持时点有效的证券监管规则、税收法规和减持地的税收返还政策，计算该自然人股东的股份减持应承担的税费净额（考虑税收返还因素），以该计算结果作为甲方、乙方分担税费的基准；

8. 自乙方按照本协议约定向甲方支付全部回购对价之日起，即视为转让标的及其一切权利均自动返还乙方，甲方对转让标的不再享有任何权利。

## 三、丙方的无限连带保证责任

就乙方在本协议项下应履行的各项责任与义务，丙方为其提供担保，承担无限连带保证责任，包括但不限于标的股票收入的支付义务、转让标的的回购义务、违约责任及其他任何责任及义务。

## 四、声明、陈述与保证

1. 甲方为合法设立、有效存续的合伙企业，乙方为合法设立有效存续的法人实体，双方签订本协议已按其内部程序作出有效决议并获得充分授权，均有权签署和履行本协议。

2. 双方同意，若在实际执行本协议项下各项约定之时，需另行签署其他文件以确保前述约定的履行的，双方均有义务配合对方签署前述文件，但前提是前述文件的内容不得与本协议的约定相冲突，或损害一方在本协议项下的权益和权利。

## 五、保密条款

双方应对本协议签署和履行过程中知悉的任何涉及对方的商业秘密保密，须保密的事项包括但不限于本协议的存在、本协议的任何内容以及其他与本协议相关的任何文件或信息，保密期限为永久。

## 六、违约责任

1. 除本协议另有约定以外，本协议中任何一方违反其在本协议项下的义务、责任、承诺、陈述与保证等，均构成对本协议的违反，且该方应当赔偿另一方因此所遭受的全部损失。

000097

2. 本协议项下约定的所有违约条款均是相互独立的，即一方根据本协议的某一违约条款向另一方主张违约责任的，不影响其根据本协议的其他违约条款向违约方主张其他违约责任。

七、其他

1. 本协议适用中国（为本协议之目的，不包括香港特别行政区、澳门特别行政区和台湾地区）法律。因本协议产生的、或与本协议有关的争议应首先通过协商解决；协商不成，任何一方有权提请北京仲裁委员会按照其仲裁规则进行仲裁。

2. 本协议签署和履行过程中所产生的税费，由双方各自承担。

3. 对本协议的任何修改、修订或变更，除非根据适用法律以书面形式作出并经双方或其代表签署，均为无效。

4. 甲乙双方特此确认，未经对方书面同意，任一方不得转让或出让其在本协议项下的权利或义务予任何第三方。

5. 如果本协议的任何条款被认定为全部或部分不合法或无效，该条款或其相关部分应在上述范围内被视为不构成本协议的一部分，但本协议其他条款的合法性和效力均不受影响。双方应在合理范围内尽其最大努力，以有效且可执行的替代规定来代替无效或不可执行的规定，替代规定的内容应与无效或不可执行的规定的拟定意思尽可能相近。

6. 一方未行使或延迟行使与本协议有关的任何权利、权力或救济均不构成对这些权利、权力或救济的放弃；一方单次或部分行使任何权利、权力或救济亦不应妨碍其另行行使或进一步行使该项权利、权力或救济，或行使任何其他权利、权力或救济。

7. 一方根据本协议而向另一方发出的任何通知或其他信函应以书面和中文形式做出，并以专人递送、邮寄、传真或电子邮件方式发出。一旦根据下列条款交付或寄送，即视为适当发出或送达：(i)通知以专人手递方式送达的，以收件人签收通知时为送达时间；(ii)以挂号邮寄方式送达的，则以邮件寄出后的第五（5）个工作日为送达时间；(iii)以特快专递方式送达的，则以邮件寄出后的第三（3）个工作日为送达时间；(iv)以传真方式送达的，则以传真发出之次日为送达时间；(v)以电子邮件方式送达的，以该电子邮件进入被送达人指定电子邮箱之次日为送达时间。

8. 本协议一式六份，协议各方各执两份，自各方法定代表人或授权委托人签字并加盖公章后生效。

5

000098

（本页无正文，为《王相荣与徐州华美琦悦企业管理咨询有限公司关于赛特斯股票收益权的回购协议》之签署页-1/3）

联系人：张旭波

联系地址：上海市中山北路 2900 号东方国际元中大厦 A 栋 13 楼

电子邮件：stevenzhang@leo.cn

联系电话：13601649601

王相荣（签字）：

6

62／81

000099

（本页无正文，为《王相荣与徐州华美琦悦企业管理咨询有限公司关于赛特斯股
票收益权的回购协议》之签署页-2/3）

徐州华美琦悦企业管理咨询有限公司（盖章）

联系人：张春源

联系地址：南京市玄武区玄武大道 699-22 号江苏软件园 18 幢

电子邮件：zhangcy@certusnet.com.cn

联系电话：13681958151

法定代表人或授权代表（签字）：＿＿＿＿＿＿＿＿＿＿＿＿

7

001    090100

（本页无正文，为《王相荣与徐州华美琦悦企业管理咨询有限公司关于赛特斯股票收益权的回购协议》之签署页-3/3)

联系人：张春源

联系地址：南京市玄武区玄武大道 699-22 号江苏软件园 18 幢

电子邮件：zhangcy@certusnet.com.cn

联系电话：13681958151

LIJUN LU (逯利军) (签字)：＿＿＿＿＿＿＿＿＿＿＿

*8*

000110

王相荣

与

徐州华美琦悦企业管理咨询有限公司



关于赛特斯股票收益权的

回购协议



2021 年 12 月 20 日

00111

甲方：王相荣

身份证号：330106197202220012

住址：浙江省温岭市太平街道瓦屿山路 7 号


乙方：徐州华美琦悦企业管理咨询有限公司

注册地：江苏省徐州市丰县王沟镇工业园区 12 号

法定代表人：LIJUN LU（逯利军）


丙方：LIJUN LU（逯利军）

美国护照号：548446178

住址：南京市玄武区玄武大道 699-22 号 18 幢


鉴于：

甲乙双方于 2021 年 12 月 20 日签署了《王相荣与徐州华美琦悦企业管理咨询有限公司关于赛特斯股票收益权的转让协议》（以下简称《收益权转让协议》）。为进一步明确《收益权转让协议》中约定的"转让标的的回购"的具体内容，双方经自愿平等协商一致，达成如下协议：

一、定义

除非本协议另有约定或根据本协议上下文另有其他含义，本协议与《收益权转让协议》中的相关用语和简称具有相同含义。

二、回购安排

鉴于双方开展《收益权转让协议》项下收益权转让交易的基础是各自对标的股票未来收益情况的预期，为降低预期偏离风险，双方一致同意设置观察期及相应回购安排如下：

1. 双方同意设置自本协议签订之日开始为期【18 个月】的观察期。甲方有权在观察期届满之日起的任意时间向乙方发出书面通知，要求乙方回购甲方依据《收益权转让协议》所享有的全部转让标的，乙方应根据甲方书面通知履行回购义务：

2

SAITVIS    -000112

2.根据观察期内赛特斯公司上市进展情况，回购对价按如下两种方式之一执行（为免歧义，以下款项单位为：人民币元，并应当按照四舍五入的原则精确至个位数）：

（1）如观察期内赛特斯公司已成功上市，则回购对价按如下方式计算：

回购对价＝本次交易对价（2000万元人民币）*（1+N/365*10%）+（双方协商一致的回购日前20个连续交易日均价-9元/股-每股门槛收益）*标的股票数量+标的股票在双方签约至回购日期间内产生的《收益权转让协议》第一条第2款下"（2）~（5）"的各类收益；

每股门槛收益＝本次交易对价*N/365*10%/标的股票数量；

N为自本协议签订之日至乙方支付完毕回购价款之日的期间，单位为"天"；

考虑到股价波动的可能性，乙方承诺，在赛特斯公司上市后，只要实施回购，回购对价均不低于本次交易对价（2000万元人民币）*（1+N/365*10%）。

（2）如至观察期满，赛特斯公司不能上市，则回购对价按如下方式计算：

回购对价＝本次交易对价*（1+N/365*10%），N为自本协议签订之日至乙方支付完毕回购价款之日的期间，单位为"天"

3.如甲方依据本协议向乙方发出回购书面通知的，乙方应于收到甲方书面通知之日起【三（3）】个工作日内，将全部回购对价支付至甲方指定银行账户。甲方指定银行账户如下：

账户名：王相荣

账号：农行浙江省温岭市石粘支行

开户行：6228 4803 6171 5380 719

4.若观察期【18个月】届满之日前赛特斯已实现上市，甲方可选择在更早的时间点向乙方发出书面通知，要求乙方根据本协议的约定回购甲方依据《收益权转让协议》所享有的全部转让标的；

5.因履行股票回购义务需要乙方出售《收益权转让协议》约定的标的股票的，与标的股票出售有关的安排（包括但不限于出售方式、出售价格、出售时机等），由甲方与乙方友好协商，但决定权归属于甲方；

6、鉴于乙方是赛特斯的控股股东，在赛特斯上市后其持有赛特斯的股份在锁定期内不能出售，乙方同意，在赛特斯已实现上市且其持有赛特斯的股份尚处于锁

3

0113

定期的情况下，乙方将通过其指定的其他自然人股东减持对应数量的标的股票，以履行本协议约定的股票回购义务；

7. 乙方通过其指定的自然人股东减持标的股票而产生的有关税费，每股 9 元以内应缴纳的税费，由乙方承担；超出每股 9 元的部分应缴纳的税费，由甲方承担。上述税费的具体金额按照减持时点有效的证券监管规则、税收法规和减持地的税收返还政策，计算该自然人股东的股份减持应承担的税费净额（考虑税收返还因素），以该计算结果作为甲方、乙方分担税费的基准；

8. 自乙方按照本协议约定向甲方支付全部回购对价之日起，即视为转让标的及其一切权利均自动返还乙方，甲方对转让标的不再享有任何权利。

三、丙方的无限连带保证责任

就乙方在本协议项下应履行的各项责任与义务，丙方为其提供担保，承担无限连带保证责任，包括但不限于标的股票收入的支付义务、转让标的的回购义务、违约责任及其他任何责任及义务。

四、声明、陈述与保证

1. 甲方为合法设立、有效存续的合伙企业，乙方为合法设立有效存续的法人实体，双方签订本协议已按其内部程序作出有效决议并获得充分授权，均有权签署和履行本协议。

2. 双方同意，若在实际执行本协议项下各项约定之时，需另行签署其他文件以确保前述约定的履行的，双方均有义务配合对方签署前述文件，但前提是前述文件的内容不得与本协议的约定相冲突，或损害一方在本协议项下的权益和权利。

五、保密条款

双方应对本协议签署和履行过程中知悉的任何涉及对方的商业秘密保密，须保密的事项包括但不限于本协议的存在、本协议的任何内容以及其他与本协议相关的任何文件或信息，保密期限为永久。

六、违约责任

1. 除本协议另有约定以外，本协议中任何一方违反其在本协议项下的义务、责任、承诺、陈述与保证等，均构成对本协议的违反，且该方应当赔偿另一方因此所遭受的全部损失。

000114

2. 本协议项下约定的所有违约条款均是相互独立的，即一方根据本协议的某一违约条款向另一方主张违约责任的，不影响其根据本协议的其他违约条款向违约方主张其他违约责任。

七、其他

1. 本协议适用中国（为本协议之目的，不包括香港特别行政区、澳门特别行政区和台湾地区）法律。因本协议产生的、或与本协议有关的争议应首先通过协商解决；协商不成，任何一方有权提请北京仲裁委员会按照其仲裁规则进行仲裁。

2. 本协议签署和履行过程中所产生的税费，由双方各自承担。

3. 对本协议的任何修改、修订或变更，除非根据适用法律以书面形式作出并经双方或其代表签署，均为无效。

4. 甲乙双方特此确认，未经对方书面同意，任一方不得转让或出让其在本协议项下的权利或义务于任何第三方。

5. 如果本协议的任何条款被认定为全部或部分不合法或无效，该条款或其相关部分应在上述范围内被视为不构成协议的一部分，但本协议其他条款的合法性和效力均不受影响。双方应在合理范围内尽其最大努力，以有效且可执行的替代规定来代替无效或不可执行的规定，替代规定的内容应与无效或不可执行的规定的拟定意思尽可能相近。

6. 一方未行使或延迟行使与本协议有关的任何权利、权力或救济均不构成对这些权利、权力或救济的放弃；一方单次或部分行使任何权利、权力或救济亦不应妨碍其另行行使或进一步行使该项权利、权力或救济，或行使任何其他权利、权力或救济。

7. 一方根据本协议而向另一方发出的任何通知或其他信函应以书面和中文形式做出，并以专人递送、邮寄、传真或电子邮件方式发出。一旦根据下列条款交付或寄送，即视为适当发出或送达：(i)通知以专人手递方式送达的，以收件人签收通知时为送达时间；(ii)以挂号邮寄方式送达的，则以邮件寄出后的第五（5）个工作日为送达时间；(iii)以特快专递方式送达的，则以邮件寄出后的第三（3）个工作日为送达时间；(iv)以传真方式送达的，则以传真发出之次日为送达时间；(v)以电子邮件方式送达的，以该电子邮件进入被送达人指定电子邮箱之次日为送达时间。

8. 本协议一式六份，协议各方各执两份，自各方法定代表人或授权委托人签字并加盖公章后生效。

115

（本页无正文，为《王相荣与徐州华美琦悦企业管理咨询有限公司关于赛特斯股票收益权的回购协议》之签署页-1/3）

联系人：张旭波

联系地址：上海市中山北路 2900 号东方国际元中大厦 A 栋 13 楼

电子邮件：stevenzhang@leo.cn

联系电话：13601649601

王相荣（签字）：

6

79／81

000118

（本页无正文，为《王相荣与徐州华美琦悦企业管理咨询有限公司关于赛特斯股票收益权的回购协议》之签署页-2/3）

徐州华美琦悦企业管理咨询有限公司

联系人：张春源

联系地址：南京市玄武区玄武大道 699-22 号江苏软件园 18 幢

电子邮件：zhangcy@certusnet.com.cn

联系电话：13681958151

法定代表人或授权代表（签字）：

7

80／81

000117

（本页无正文，为《王相荣与徐州华美琦悦企业管理咨询有限公司关于赛特斯股票收益权的回购协议》之签署页-3/3)

联系人：张春源

联系地址：南京市玄武区玄武大道 699-22 号江苏软件园 18 幢

电子邮件：zhangcy@certusnet.com.cn

联系电话：13681958151

LIJUN LU （逯利军）（签字）：

本件与原件核对无误

北京仲裁委员会
复印材料专用章
（    ）京仲案字    号复印于    年月日

8

81／81

## For the Case (2023) JZAZ No. 06963

## Agreement on Arbitration and Debt Assumption

*Seal: This document has been verified and is in conformity with the original.*
*Special Seal for Copy Materials, Beijing Arbitration Commission ( ) JZAZ   No. Copied on (date)*
*(Cross-Page Seal of Beijing Arbitration Commission)*
*(Cross-Page Seal: Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.)*
*(Cross-Page Seal: Dongyang Certus Information Technology Co., Ltd.)*
*(Cross-Page Seal: Xingtai Certus Information Technology Co., Ltd.)*

This Agreement has been concluded by the following Parties on <u>January 19</u>, 2024, in <u>Qiantang</u> District, <u>Hangzhou</u>:

**Party A: Wang Xiangrong**
Permanent Residence: Room 101, No. 1, Building 62, Haotingyuan, Kaiyuan Villa, No.1 Baota Road, Chengxi Sub-district, Wenling City, Zhejiang Province
Dwelling Place: Room 1203, Unit 1, Building 2, Shimao Plaza, Qiantang District, Hangzhou City, Zhejiang Province
Contact Address: A-F11, No. 1 Hangda Road, Xihu District, Hangzhou City, Zhejiang Province

**Party B: Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.**
Permanent Residence: No. 12, Industrial Park, Wanggou Town, Feng County, Xuzhou City, Jiangsu Province
Contact Address: Building 18, No. 699-22, Xuanwu Avenue, Xuanwu District, Nanjing City, Jiangsu Province
Legal Representative (Person in Charge): LIJUN LU        Title: Chairman
Contact Tel. 19800177001 (LIJUN LU) / 13681958151 (Contact Person: Zhang Chunyuan)

**Party C: LIJUN LU**
Contact Address: Building 18, No. 699-22, Xuanwu Avenue, Xuanwu District, Nanjing City, Jiangsu Province
US Passport No. 548446178
Permanent Residence Permit for Foreigners No.: USA320168031703
Contact Tel. 19800177001 (LIJUN LU) / 13681958151 (Contact Person: Zhang Chunyuan)

**Party D: Dongyang Certus Information Technology Co., Ltd.**
Permanent Residence: Wuyi Industrial Function Zone, Nanshi Sub-district, Dongyang City, Jinhua City, Zhejiang Province
Contact Address: Building 18, No. 699-22, Xuanwu Avenue, Xuanwu District, Nanjing City, Jiangsu Province
Legal Representative (Person in Charge): LIJUN LU
Title: Executive Director and General Manager
Contact Tel. 19800177001 (LIJUN LU) / 13681958151 (Contact Person: Zhang Chunyuan)

**Party E: Xingtai Certus Information Technology Co., Ltd.**

Permanent Residence: C3, Huayu Lane, Garden Expo Park, Xingdong New District, Xingtai City, Hebei Province

Contact Address: Building 18, No. 699-22, Xuanwu Avenue, Xuanwu District, Nanjing City, Jiangsu Province

Legal Representative (Person in Charge): LIJUN LU

Title: Executive Director and General Manager

Contact Tel. 19800177001 (LIJUN LU) / 13681958151 (Contact Person: Zhang Chunyuan)

**Party F: MEI WANG**

Contact Address: Building 18, No. 699-22, Xuanwu Avenue, Xuanwu District, Nanjing City, Jiangsu Province

US Passport No. 548446177

Permanent Residence Permit for Foreigners: USA320168053002

Contact Tel. 19800177001 (LIJUN LU) / 13681958151 (Contact Person: Zhang Chunyuan)

Any of the above Parties shall be referred to individually as a '**Party**' and collectively as the '**Parties**'.

During the hearing of the (2023) JZAZ No. 06963 Arbitration Case (hereinafter referred to as '**this Case**') by the Beijing Arbitration Commission, the parties hereto have reached this Agreement on Arbitration and Debt Assumption (hereinafter referred to as '**this Agreement**'), which shall be jointly observed by all parties.

**Article 1** The Parties hereby agree that any dispute arising from or concerning (2023) JZAZ No. 06963 Arbitration Case of the Beijing Arbitration Commission shall be submitted to the Beijing Arbitration Commission for arbitration pursuant to its arbitration rules and shall be handled by the arbitral tribunal formed for (2023) JZAZ No. 06963 Arbitration Case.

Party D, Party E, and Party F agree to participate in this Case as Respondents. They acknowledge the composition of the arbitral tribunal and voluntarily waive their rights for the defense period, the service of process period, and to select an arbitrator. The Parties agree to add Party D, Party E, and Party F as Respondents to this Case.

**Article 2** The Parties acknowledge that all performance periods for the debts borne by Party B and Party C corresponding to all arbitration claims of Party A in this Case have expired; all arbitration claims in the *Arbitration Application* (see **Appendix I** for details) submitted by Party A to the Beijing Arbitration Commission shall be fully supported.

2/81

**Article 3** Party D, Party E, and Party F respectively promise that they voluntarily agree to immediately assume joint and several liability for the debts borne by Party B and Party C corresponding to all of Party A's arbitration claims in this Case, i.e., Party D, Party E, and Party F voluntarily agree to immediately join in and assume joint and several liability for all responsibilities and obligations of Party B and Party C arising from the following agreements (hereinafter referred to as the '**Target Debts**'; the agreements are detailed in **Appendix II**) for Party A:

The Three *Loan Contracts* respectively signed on March 23, 2021, August 25, 2021, and December 15, 2021;

The *Transfer Agreement Regarding Certus Stock Income Rights* and the *Repurchase Agreement Regarding Certus Stock Income Rights* signed on March 30, 2021;

The *Supplementary Agreement to the Repurchase Agreement Regarding Certus Stock Income Rights signed* on April 7, 2021;

The *Transfer Agreement Regarding Certus Stock Income Rights* and the *Repurchase Agreement Regarding Certus Stock Income Rights* signed on September 6, 2021;

The *Transfer Agreement Regarding Certus Stock Income Rights* and the *Repurchase Agreement Regarding Certus Stock Income Rights* signed on December 20, 2021.

Party D, Party E, and Party F shall jointly assume debts with Party B and Party C, and acknowledge that the amount of these debts shall be based on the amount of claims specified in the *Arbitration Application* submitted by Party A to the Beijing Arbitration Commission in this Case.

**Article 4** Party D agrees that, in addition to assuming the Target Debts, it shall separately provide a pledge guarantee to Party A with 100% of the stock rights it holds in [**Dongyang Certus Information Technology Co., Ltd.**] (subscribed capital contribution: CNY 50,000,000) (hereinafter referred to as the '**Underlying Stocks**'). Party D shall assume unlimited joint and several guarantee liability for the performance of the Target Debts (corresponding to Party A's principal claim) and all costs incurred in realizing the claims (including but not limited to interest, overdue interest, penalty interest, default penalties, compensation for damages, as well as reasonable expenses such as appraisal fees, assessment fees, auction fees, litigation costs, arbitration fees, notarization fees, and attorney's fees incurred by Party A in realizing the claims). Party A shall have the right to demand Party D or Party B, Party C, Party E, and Party F or any other third party simultaneously assume the Target Debts or guarantee liability, and may also seek to realize its claims through the Stock Rights Pledge guarantee separately provided by Party D.

The Parties shall complete the registration of the pledge on the underlying stocks with the relevant administrative authority within [2] days from signing the relevant *Stock Rights Pledge Agreement*. Party B, Party C, Party D, Party E, and Party F shall promptly deliver to Party A the originals of all relevant documents of title for the underlying stocks and all registration documents issued by the administrative authority.

In the event of any conflict between the provisions herein regarding the pledge of the underlying stocks and the separately signed *Stock Rights Pledge Agreement* by the Parties, the latter shall prevail.

**Article 5** Party B, Party C, Party D, Party E, and Party F promise that they will not change their contact information. Any notice sent by Party A to any one of Party B, Party C, Party D, Party E, or Party F shall be deemed effectively served if delivered to any of the addresses or methods specified in this Agreement: their respective Permanent Residence/contact telephone/the social media account bound to the contact telephone. Such notice shall be deemed served at the time of hand-delivery or upon sending via post or SMS/email/APPs by Party A.

**Article 6** This Agreement shall take effect from the agreed date specified herein after being signed or sealed by all Parties. Any Party shall be deemed to have committed to perform its obligations under this Agreement towards the opposite Party upon signing this Agreement.

Without the prior written consent of Party A, no Party may unilaterally rescind or terminate this Agreement once it takes effect.

Any supplement or amendment to this Agreement requires separate negotiations by the Parties and shall only become effective upon signing a written agreement by all Parties. However, if such amendment or supplement pertains only to the rights and obligations of specific Parties hereto, it shall require a written agreement solely among such specific Parties.

Matters not covered herein may be addressed in a separate supplementary agreement to be signed by the Parties. Such supplementary agreement shall compose of an integral and inseparable part of this Agreement. The termination or rescission of this Agreement shall not affect Party A's right to demand that Party B, Party C, Party D, Party E, and Party F bear liability for breach.

Without the prior written consent of Party A, no Party may assign all and/or any part of its rights/obligations under this Agreement.

**Article 7** The conclusion, validity, interpretation, performance, and dispute resolution of this Agreement shall be governed by and construed pursuant to laws of the People's Republic of China.

**Article 8** The term 'Yuan' in this Agreement shall refer to Chinese Yuan (CNY or RMB). The term 'written' or 'in writing' in this Agreement shall mean any non-oral form delivered via mail, email, APPs (such as WeChat, DingTalk, etc.), or similar means, which can directly present readable content through the relevant medium.

This Agreement is written in Chinese and made in septuplicate. Each Party shall hold one, and the rest one shall be submitted to the Beijing Arbitration Commission. All counterparts shall have the same legal effect.

This Agreement is signed in Qiantang District, Hangzhou City.

*(No text follows but the signing pages and Appendices)*

4/81

(2023) JZAZ No. 06963 Agreement on Arbitration and Debt Assumption

(This page includes no text, serving as the signing page of *(2023) JZAZ No. 06963 Case - Agreement on Arbitration and Debt Assumption*)

Party A: Wang Xiangrong (Signature)

5/81

(2023) JZAZ No. 06963 Agreement on Arbitration and Debt Assumption

(This page includes no text, serving as the signing page of *(2023) JZAZ No. 06963 Case - Agreement on Arbitration and Debt Assumption*)

Party B: Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd. (Seal)

Party C: LIJUN LU (Signature)

6/81

(2023) JZAZ No. 06963 Agreement on Arbitration and Debt Assumption

(This page includes no text, serving as the signing page of *(2023) JZAZ No. 06963 Case - Agreement on Arbitration and Debt Assumption*)

Party D: Dongyang Certus Information Technology Co., Ltd. (Seal)

7/81

(2023) JZAZ No. 06963 Agreement on Arbitration and Debt Assumption

(This page includes no text, serving as the signing page of *(2023) JZAZ No. 06963 Case - Agreement on Arbitration and Debt Assumption*)

Party E: Xingtai Certus Information Technology Co., Ltd. (Seal)

**8/81**

(2023) JZAZ No. 06963 Agreement on Arbitration and Debt Assumption

(This page includes no text, serving as the signing page of *(2023) JZAZ No. 06963 Case - Agreement on Arbitration and Debt Assumption*)

Party F: MEI WANG (Signature)

Signature of the arbitration agent jointly authorized by
Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd., LIJUN LU, Dongyang Certus Information Technology Co., Ltd., Xingtai Certus Information Technology Co., Ltd., and MEI WANG:

Zheng Haifeng (Signature)

9/81

Appendix:

## Repurchase Agreement

## Regarding Certus Stock Income Rights

## Between

## Wang Xiangrong

## &

## Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.

March 30, 2021

34/81

Appendix:

Party A: **Wang Xiangrong**

ID No. 330106197202220012

Address No. 7, Wayushan Road, Taiping Sub-district, Wenling City, Zhejiang Province

Party B: **Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.**

Registered Address: No. 12, Industrial Park, Wanggou Town, Feng County, Xuzhou City, Jiangsu Province

Legal Representative: LIJUN LU

Party C: **LIJUN LU**

US Passport No. 548446178

Address: Building 18, No. 699-22, Xuanwu Avenue, Xuanwu District, Nanjing City

**Whereas:**

Party A and Party B signed the *Transfer Agreement Regarding Certus Stock Income Rights between Wang Xiangrong and Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.* (hereinafter referred to as the *Income Rights Transfer Agreement*) on March 30, 2021. To further clarify the specific content of the 'repurchase of the subject matter of transfer' in the *Income Rights Transfer Agreement,* the Parties hereby agree as follows through mutual consultation on a voluntary and equal basis:

**I. Definitions**

Unless otherwise agreed herein or required by the context of this Agreement, all defined terms and abbreviations used in this Agreement shall have the same meanings as those described in the *Income Rights Transfer Agreement.*

**II. Arrangement for Repurchase**

Given the Parties' engagement in the transfer of the Stock Income Rights under the *Income Rights Transfer Agreement* is based on their respective expectations regarding the future returns of the underlying stocks; to mitigate risk of deviation from expectations, the Parties hereby mutually agree to establish an Observation Period and corresponding repurchase arrangement as follows:

1. The Parties hereby establish an Observation Period of [18 months] commencing on the effective date of this Agreement. Party A shall have the right, at any time after the expiration of the Observation Period, to demand Party B to repurchase all the subject matter of transfer held by Party A under the *Income Rights Transfer Agreement* by sending a written notice to Party B. Party B shall fulfill the repurchase obligation in accordance with Party A's written notice;

Appendix:

2. The Repurchase Consideration shall be implemented according to Certus' IPO progress during the Observation Period in one of the following two methods (To avoid ambiguity, all amounts shall be denominated in CNY and rounded to the nearest integer):

(1) Successful IPO of Certus during the Observation Period: repurchase consideration calculated as follows

Repurchase consideration= Consideration of the Current Transaction (CNY 80,000,000)+ (Average Price of the 20 consecutive trading days prior to the Repurchasing Date agreed upon by both parties −CNY 10/share) *Quantity of underlying stocks* 80% + All benefits of underlying stocks under (2) ~ (5) of Article 1, Paragraph 2 of the *Income Rights Transfer Agreement* generated between the Signing Date and the Repurchasing Date;

(2) Failed IPO of Certus by the End of Observation Period: repurchase consideration calculated as follows

Repurchase consideration = Consideration of the Current Transaction * (1 + N/365 * 10%), where 'N' represents Days between the Agreement signing date and the date of full payment of repurchase consideration by Party B; unit: "day"

3. Upon Party A's sending of a written notice of repurchase under this Agreement, Party B shall transfer the full repurchase consideration to Party A's designated bank account within[three (3)] business days after receiving the notice.

The account designated by Party A:

Account Name: Wang Xiangrong

Opening Bank: Agricultural Bank of China, Shinian Subbranch, Wenling City, Zhejiang Province

Account No. 6228 4803 6171 5380 719

4. If Certus completes its IPO prior to the expiration of the [18-month] Observation Period, Party A may issue a written notice to Party B at any earlier time, demanding the repurchase of all subject matter of transfer held by Party A under the *Income Rights Transfer Agreement* in accordance with the terms herein;

5. In the event that Party B needs to sell the underlying stocks specified in the *Income Rights Transfer Agreement* to fulfill its repurchase obligations under this Agreement, the arrangements related to the sale of the underlying stocks (including but not limited to the method of sale, sale price and timing of sale, etc.) shall be amicably negotiated between Party A and Party B, but the decision-making power shall belong to Party A;

6. Given that Party B is the controlling shareholder of Certus and thus subject to statutory lock-up period restrictions after listing, Party B agrees: in the event that Certus completes its IPO and Party B's shares are still in the statutory lock-up period, Party B shall procure its designated natural person shareholders to reduce the corresponding Quantity of underlying stocks required to fulfill its repurchase obligations hereunder;

7. All taxes and fees arising from reduction of underlying stocks by Party B's designated natural person shareholders shall be borne by Party B (share price within CNY10/share); for taxes and fees arising from reduction of underlying stocks (when the share price is above CNY10/share), Party A and Party B shall share the tax burden at a ratio of 80%:20%. The specific amount of the above-mentioned taxes and fees shall be calculated in accordance with the effective securities regulatory rules, tax laws and regulations at the time of the reduction and the tax refund policies of the

36/81

Appendix:

place where the reduction is made. This net amount (taking into account the tax refund factor) shall be used as the benchmark for the tax and fee sharing between Party A and Party B;

8. Upon Party B's full payment of the repurchase consideration to Party A in accordance with this Agreement, all subject matter of transfer and associated entitlements shall automatically revert to Party B, and Party A shall cease to enjoy any rights over the subject matter of transfer.

## III. Unlimited Joint and Several Guarantee by Party C

Party C hereby provides unlimited joint and several guarantee for all obligations and liabilities of Party B under this Agreement, including but not limited to payment obligations for the income from the underlying stocks, repurchase obligations of the subject matter of transfer, liability for breach of contract, and any other obligations arising hereunder.

## IV. Declaration, Statement, and Warranty

1. Party A is a legally established and validly existing partnership, and Party B is a legally established and validly existing legal entity. Both parties have made effective resolutions and obtained full authorization in accordance with their internal procedures when signing this Agreement, and both parties have the right to sign and perform this agreement.

2. Both parties agree that if, during the actual execution of the various provisions under this Agreement, in the event that supplementary documents need to be signed to ensure the performance of the aforementioned agreements, both parties are obligated to cooperate with the other party in signing the aforementioned documents, provided that the contents of the aforementioned documents do not conflict with this Agreement or infringe upon the rights and interests of any party under this Agreement.

## V. Confidentiality

Both Parties shall maintain strict confidentiality regarding all confidential information disclosed during the execution and performance of this Agreement, including but not limited to the existence of this Agreement, terms and conditions herein, and any related documents or information. The confidentiality obligation shall remain perpetual.

## VI. Liability for Breach

1. Unless otherwise specified herein, any failure by a Party to perform its obligations, responsibilities, commitments, statements, or warranties under this Agreement shall constitute a material breach, and the breaching party shall compensate for all the losses suffered by the observant party thereby.

2. The breach-related clauses under this Agreement are mutually independent, which means a Party's claim of liability for breach against the other party under one provision shall not preclude its rights to claim under other provisions.

37/81

Appendix:

## VII. Miscellaneous Provisions

1. This Agreement shall be governed by and construed in accordance with the laws of China (for purposes of this Agreement, excluding Hong Kong SAR, Macao SAR, and Taiwan). Any dispute arising from this Agreement shall first be resolved through negotiation; if negotiation fails, either Party may submit the dispute to the Beijing Arbitration Commission for arbitration in accordance with the arbitration rules.

2. Each Party shall bear its own taxes, fees, and other charges incurred in connection with the execution and performance of this Agreement.

3. No modification, amendment, or waiver of any provision of this Agreement shall be effective unless made in writing and signed by both Parties or their duly authorized representatives.

4. Both Parties hereby confirm that either Party may assign or transfer any of its rights or obligations under this Agreement to any third party without the prior written consent of the other Party.

5. If any provision in this Agreement is held wholly or partially illegal or invalid, such provision or its related part shall be deemed not to constitute a part of this Agreement within the above-mentioned scope; while the remainder of the Agreement continues in full force. Both parties shall, within a reasonable scope, make their best efforts to replace the invalid or unenforceable provisions with effective and enforceable alternative provisions with the closest intentions to the original ones.

6. No failure or delay by either Party in exercising any right, power, or remedy under this Agreement shall constitute a waiver thereof, nor shall any single or partial exercise of any such right, power, or remedy preclude any other or further exercise thereof.

7. Any notice or other letter sent by one Party to the other Party under this Agreement shall be made in written Chinese and sent by personal delivery, mail, fax, or email. Once delivered or sent in accordance with the following terms, it shall be deemed to have been properly sent or served: (i) Personal delivery: upon the recipient's signing for receipt of the notice; (ii) Registered mail: the fifth (5) business day after the mail is sent; (iii) Express mail: the third (3) business day after the mail is sent; (iv) Fax: the next day after sending of the fax; (v) Email: the next day after the arrival of the email in the email address designated by the person to be served.

8. This agreement shall be made in sextuplicate, with each party holding two. It shall come into effect upon being signed by the legal representatives or authorized representatives of each party and affixed with their official seals.

(No text follows but the signature pages)

38/81

Appendix:
(This page includes no text, serving as the signing page-1/3 of the *Repurchase Agreement Regarding Certus Stock Income Rights Between Wang Xiangrong & Jizhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.*)

Contact Person: Zhang Xubo

Contact Address: 13th Floor, Block A, Oriental International Yuanzhong Mansion, No. 2900, North Zhongshan Road, Shanghai City

E-mail: stevenzhang@leo.cn

Contact Tel. 13601649601

Wang Xiangrong (Signature): _____(Signature & Fingerprint)_____

39/81

Appendix:

(This page includes no text, serving as the signing page-2/3 of the *Repurchase Agreement Regarding Certus Stock Income Rights Between Wang Xiangrong & Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.*)

**Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.** (Seal)

Contact Person: Zhang Chunyuan

Contact Address: Building 18, Jiangsu Software Park, No. 699-22, Xuanwu Avenue, Xuanwu District, Nanjing City

E-mail: zhangcy@certusnet.com.cn

Contact Tel. 13681958151

Legal Representative or Authorized Representative (Signature):

LIJUN LU (Signature)

40/81

Appendix:

(This page includes no text, serving as the signing page-3/3 of the *Repurchase Agreement Regarding Certus Stock Income Rights Between Wang Xiangrong & Suzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.*)

Contact Person: Zhang Chunyuan

Contact Address: Building 18, Jiangsu Software Park, No. 699-22, Xuanwu Avenue, Xuanwu District, Nanjing City

E-mail: zhangcy@certusnet.com.cn

Contact Tel. 13681958151

LIJUN LU (Signature):

(Signature & Fingerprint)

41/81

Appendix:

# Supplementary Agreement

## to

## Repurchase Agreement

## Regarding Certus Stock Income Rights

### Between

### Wang Xiangrong

### &

### Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.

April 7, 2021

42/81

Appendix:

**Party A: Wang Xiangrong**

ID No. 330106197202220012

Address: No. 7, Wayushan Road, Taiping Sub-district, Wenling City, Zhejiang Province

**Party B: Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.**

Registered Address: No. 12, Industrial Park, Wanggou Town, Feng County, Xuzhou City, Jiangsu Province

Legal Representative: LIJUN LU

**Party C: LIJUN LU**

US Passport No. 548446178

Address: Building 18, No. 699-22, Xuanwu Avenue, Xuanwu District, Nanjing City

**Whereas:**

Party A and Party B signed the *Transfer Agreement Regarding Certus Stock Income Rights between Wang Xiangrong and Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.* (hereinafter referred to as the *Income Rights Transfer Agreement*) and the *Repurchase Agreement Regarding Certus Stock Income Rights between Wang Xiangrong and Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.* (hereinafter referred to as the *Income Rights Repurchase Agreement*) on March 30, 2021. Through voluntary and equal negotiations, Party A, Party B, and Party C have amended certain clauses in the *Income Rights Repurchase Agreement* as follows:

**I. Definitions**

Unless otherwise agreed herein or required by the context of this Agreement, all defined terms and abbreviations used in this Agreement shall have the same meanings as those described in the *Income Rights Repurchase Agreement*.

**II. Amendments to the *Income Rights Repurchase Agreement***

The original Article II, paragraph 2 in the *Income Rights Repurchase Agreement* is as follows:

"2.The Repurchase Consideration shall be implemented according to Certus' IPO progress during the Observation Period in one of the following two methods (To avoid ambiguity, all amounts shall be denominated in CNY and rounded to the nearest integer):

(1) Successful IPO of Certus during the Observation Period: repurchase consideration calculated as follows

Repurchase consideration= Consideration of the Current Transaction (CNY 80,000,000)+ (Average Price of the 20 consecutive trading days prior to the Repurchasing Date agreed upon by both parties −CNY 10/share) *Quantity of underlying stocks* 80% + All benefits of underlying stocks under (2) ~ (5) of Article 1, Paragraph 2 of the *Income Rights Transfer Agreement* generated between the Signing Date and the Repurchasing Date;

Appendix:

(2) Failed IPO of Certus by the End of Observation Period: repurchase consideration calculated as follows

Repurchase consideration = Consideration of the Current Transaction * (1 + N/365 * 10%), where 'N' represents Days between the agreement signing date and the date of full payment of repurchase consideration by Party B; unit: "day"

This clause shall be amended as follows:

2. The Repurchase Consideration shall be implemented according to Certus' IPO progress during the Observation Period in one of the following two methods (To avoid ambiguity, all amounts shall be denominated in CNY and rounded to the nearest integer):

(1) Successful IPO of Certus during the Observation Period: repurchase consideration calculated as follows

Repurchase consideration= Consideration of the Current Transaction (CNY 80,000,000) * (1 + N/365 * 10%) + (Average Price of the 20 consecutive trading days prior to the Repurchasing Date agreed upon by both parties − CNY 10/share — Threshold return/share) *Quantity of underlying stocks* 80% + All incomes of underlying stocks under (2) ~ (5) of Article 1, Paragraph 2 of the *Income Rights Transfer Agreement* generated between the Signing Date and the Repurchasing Date;

Threshold return/share = Consideration of the Current Transaction * N/365 * 10% /Quantity of underlying stocks;

'N' represents the period from the date of signing of this Agreement until the date when Party B completes payment of the repurchase consideration; unit: "day";

Considering the possibility of stock price fluctuations, Party B promises that, after Certus' IPO, as long as the repurchase is implemented, the repurchase consideration shall not be lower than Consideration of the Current Transaction (CNY 80,000,000) * (1 + N/365 * 10%)].

(2) Failed IPO of Certus by the End of Observation Period: repurchase consideration calculated as follows

Repurchase consideration = Consideration of the Current Transaction * (1 + N/365 * 10%), where 'N' represents Days between the Agreement signing date and the date of full payment of repurchase consideration by Party B; unit: "day"

III. The Parties hereby unanimously agree that, except as amended by this Supplementary Agreement, all other clauses of the *Income Rights Repurchase Agreement* shall remain in full force and effect.

(No text follows but the signature pages)

44/81

Appendix:

(This page includes no text, serving as the signing page-1/3 of the *Supplementary Agreement to the Repurchase Agreement Regarding Certus Stock Income Rights Between Wang Xiangrong & Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.*)

Contact Person: Zhang Xubo

Contact Address: 13th Floor, Block A, Oriental International Yuanzhong Mansion, No. 2900, North Zhongshan Road, Shanghai City

E-mail: stevenzhang@leo.cn

Contact Tel. 13601649601

Wang Xiangrong (Signature): (Signature)

45/81

Appendix:
(This page includes no text, serving as the signing page-2/3 of the *Supplementary Agreement to the Repurchase Agreement Regarding Certus Stock Income Rights Between Wang Xiangrong & Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.*)

Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd. (Seal)

Contact Person: Zhang Chunyuan

Contact Address: Building 18, Jiangsu Software Park, No. 699-22, Xuanwu Avenue, Xuanwu District, Nanjing City

E-mail: zhangcy@certusnet.com.cn

Contact Tel. 13681958151

Legal Representative or Authorized Representative (Signature):

LIJUN LU   (Signature)

46/81

Appendix:

This page includes no text, serving as the signing page-3/3 of the *Supplementary Agreement to the Repurchase Agreement Regarding Certus Stock Income Rights Between Wang Xiangrong & Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.*)

Contact Person: Zhang Chunyuan

Contact Address: Building 18, Jiangsu Software Park, No. 699-22, Xuanwu Avenue, Xuanwu District, Nanjing City

E-mail: zhangcy@certusnet.com.cn

Contact Tel. 13681958151

LIJUN LU (Signature):

(Signature)

47/81

Appendix:

# Repurchase Agreement

## Regarding Certus Stock Income Rights

### Between

### Wang Xiangrong

### &

### Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.

September 6, 2021

**57/81**

Appendix:

**Party A: Wang Xiangrong**

ID No. 330106197202220012

Address No. 7, Wayushan Road, Taiping Sub-district, Wenling City, Zhejiang Province

**Party B: Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.**

Registered Address: No. 12, Industrial Park, Wanggou Town, Feng County, Xuzhou City, Jiangsu Province

Legal Representative: LIJUN LU

**Party C: LIJUN LU**

US Passport No. 548446178

Address: Building 18, No. 699-22, Xuanwu Avenue, Xuanwu District, Nanjing City

**Whereas:**

Party A and Party B signed the Transfer *Agreement Regarding Certus Stock Income Rights between Wang Xiangrong and Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.* (hereinafter referred to as the *Income Rights Transfer Agreement*) on September 6, 2021. To further clarify the specific content of the 'repurchase of the subject matter of transfer' in the *Income Rights Transfer Agreement*, the Parties hereby agree as follows through mutual consultation on a voluntary and equal basis:

**I. Definitions**

Unless otherwise agreed herein or required by the context of this Agreement, all defined terms and abbreviations used in this Agreement shall have the same meanings as those described in the *Income Rights Transfer Agreement*.

**II. Arrangement for Repurchase**

Given the Parties' engagement in the transfer of the Stock Income Rights under the *Income Rights Transfer Agreement* is based on their respective expectations regarding the future returns of the underlying stocks; to mitigate risk of deviation from expectations, the Parties hereby mutually agree to establish an Observation Period and corresponding repurchase arrangement as follows:

1. The Parties hereby establish an Observation Period of [18 months] commencing on the effective date of this Agreement. Party A shall have the right, at any time after the expiration of the Observation Period, to demand Party B to repurchase all the subject matter of transfer held by Party A under the *Income Rights Transfer Agreement* by sending a written notice to Party B. Party B shall fulfill the repurchase obligation in accordance with Party A's written notice;

Appendix:

2. The Repurchase Consideration shall be implemented according to Certus' IPO progress during the Observation Period in one of the following two methods (To avoid ambiguity, all amounts shall be denominated in CNY and rounded to the nearest integer):

(1) Successful IPO of Certus during the Observation Period: repurchase consideration calculated as follows

Repurchase consideration= Consideration of the Current Transaction (CNY25,000,000) *(1 + N/365 * 10%)+ (Average Price of the 20 consecutive trading days prior to the Repurchasing Date agreed upon by both parties — CNY9/share —Threshold Return/share) *Quantity of underlying stocks + All benefits of underlying stocks under (2) ~ (5) of Article 1, Paragraph 2 of the *Income Rights Transfer Agreement* generated between the Signing Date and the Repurchasing Date;

Threshold Return/share = Consideration of the Current Transaction * N/365 * 10%/Quantity of underlying stocks;

'N' represents the period from the date of signing of this Agreement until the date when Party B completes the payment of the repurchase consideration; unit: "day";

Considering the possibility of stock price fluctuations, Party B promises that, after Certus' IPO, as long as the repurchase is implemented, the repurchase consideration shall not be lower than Consideration of the Current Transaction (CNY25,000,000) * (1 + N/365 * 10%)].

(2) Failed IPO of Certus by the End of Observation Period: repurchase consideration calculated as follows

Repurchase consideration = Consideration of the Current Transaction * (1 + N/365 * 10%), where 'N' represents Days between the Agreement signing date and the date of full payment of repurchase consideration by Party B; unit: "day"

3. Upon Party A's sending of a written notice of repurchase under this Agreement, Party B shall transfer the full repurchase consideration to Party A's designated bank account within[three (3)] business days after receiving the notice.

The account designated by Party A:

Account Name: Wang Xiangrong

Opening Bank: Agricultural Bank of China, Shinian Subbranch, Wenling City, Zhejiang Province

Account No. 6228 4803 6171 5380 719

4. If Certus completes its IPO prior to the expiration of the [18-month] Observation Period, Party A may issue a written notice to Party B at any earlier time, demanding the repurchase of all subject matter of transfer held by Party A under the *Income Rights Transfer Agreement* in accordance with the terms herein;

5. In the event that Party B needs to sell the underlying stocks specified in the *Income Rights Transfer Agreement* to fulfill its repurchase obligations under this Agreement, the arrangements related to the sale of the underlying stocks (including but not limited to the method of sale, sale price and timing of sale, etc.) shall be amicably negotiated between Party A and Party B, but the decision-making power shall belong to Party A;

6. Given that Party B is the controlling shareholder of Certus and thus subject to statutory lock-up period restrictions after listing, Party B agrees: in the event that Certus completes its IPO and Party B's shares are still in the statutory lock-up period, Party B shall procure its designated natural person shareholders to reduce the corresponding Quantity of underlying stocks required to fulfill its repurchase obligations hereunder;

Appendix:
. All taxes and fees arising from reduction of underlying stocks by Party B's designated natural person shareholders shall be borne by Party B (share price within CNY 9/share); Party A shall bear taxes (when share price exceeding CNY 9/share). The specific amount of the above-mentioned taxes and fees shall be calculated in accordance with the effective securities regulatory rules, tax laws and regulations at the time of the reduction and the tax refund policies of the place where the reduction is made. This net amount (taking into account the tax refund factor) shall be used as the benchmark for the tax and fee sharing between Party A and Party B;
. Upon Party B's full payment of the repurchase consideration to Party A in accordance with this Agreement, all subject matter of transfer and associated entitlements shall automatically revert to Party B, and Party A shall cease to enjoy any rights over the subject matter of transfer.

## III. Unlimited Joint and Several Guarantee by Party C

Party C hereby provides unlimited joint and several guarantee for all obligations and liabilities of Party B under this Agreement, including but not limited to payment obligations for the income from the underlying stocks, repurchase obligations of the subject matter of transfer, liability for breach of contract, and any other obligations arising hereunder.

## IV. Declaration, Statement, and Warranty

1. Party A is a legally established and validly existing partnership, and Party B is a legally established and validly existing legal entity. Both parties have made effective resolutions and obtained full authorization in accordance with their internal procedures when signing this Agreement, and both parties have the right to sign and perform this agreement.
2. Both parties agree that if, during the actual execution of the various provisions under this Agreement, in the event that supplementary documents need to be signed to ensure the performance of the aforementioned agreements, both parties are obligated to cooperate with the other party in signing the aforementioned documents, provided that the contents of the aforementioned documents do not conflict with this Agreement or infringe upon the rights and interests of any party under this Agreement.

## V. Confidentiality

Both Parties shall maintain strict confidentiality regarding all confidential information disclosed during the execution and performance of this Agreement, including but not limited to the existence of this Agreement, terms and conditions herein, and any related documents or information. The confidentiality obligation shall remain perpetual.

## VI. Liability for Breach

1. Unless otherwise specified herein, any failure by a Party to perform its obligations, responsibilities, commitments, statements, or warranties under this Agreement shall constitute a material breach, and the breaching party shall compensate for all the losses suffered by the observant party thereby.

60/81

Appendix:

The breach-related clauses under this Agreement are mutually independent, which means a Party's claim of liability for breach against the other party under one provision shall not preclude its rights to claim under other provisions.

## VII. Miscellaneous Provisions

1. This Agreement shall be governed by and construed in accordance with the laws of China (for purposes of this Agreement, excluding Hong Kong SAR, Macao SAR, and Taiwan). Any dispute arising from this Agreement shall first be resolved through negotiation; if negotiation fails, either Party may submit the dispute to the Beijing Arbitration Commission for arbitration in accordance with the arbitration rules.

2. Each Party shall bear its own taxes, fees, and other charges incurred in connection with the execution and performance of this Agreement.

3. No modification, amendment, or waiver of any provision of this Agreement shall be effective unless made in writing and signed by both Parties or their duly authorized representatives.

4. Both Parties hereby confirm that either Party may assign or transfer any of its rights or obligations under this Agreement to any third party without the prior written consent of the other Party.

5. If any provision in this Agreement is held wholly or partially illegal or invalid, such provision or its related part shall be deemed not to constitute a part of this Agreement within the above-mentioned scope; while the remainder of the Agreement continues in full force. Both parties shall, within a reasonable scope, make their best efforts to replace the invalid or unenforceable provisions with effective and enforceable alternative provisions with the closest intentions to the original ones.

6. No failure or delay by either Party in exercising any right, power, or remedy under this Agreement shall constitute a waiver thereof, nor shall any single or partial exercise of any such right, power, or remedy preclude any other or further exercise thereof.

7. Any notice or other letter sent by one Party to the other Party under this Agreement shall be made in written Chinese and sent by personal delivery, mail, fax, or email. Once delivered or sent in accordance with the following terms, it shall be deemed to have been properly sent or served: (i) Personal delivery: upon the recipient's signing for receipt of the notice; (ii) Registered mail: the fifth (5) business day after the mail is sent; (iii) Express mail: the third (3) business day after the mail is sent; (iv) Fax: the next day after sending of the fax; (v) Email: the next day after the arrival of the email in the email address designated by the person to be served.

8. This agreement shall be made in sextuplicate, with each party holding two. It shall come into effect upon being signed by the legal representatives or authorized representatives of each party and affixed with their official seals.

(No text follows but the signature pages)

61/81

Appendix:

(This page includes no text, serving as the signing page-1/3 of the *Repurchase Agreement Regarding Certus Stock Income Rights Between Wang Xiangrong & Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.*)

Contact Person: Zhang Xubo

Contact Address 13th Floor, Block A, Oriental International Yuanzhong Mansion, No. 2900, North Zhongshan Road, Shanghai City

E-mail: stevenzhang@leo.cn

Contact Tel. 13601649601

Wang Xiangrong (Signature):

   (Signature)

62/81

Appendix:

(This page includes no text, serving as the signing page-2/3 of the *Repurchase Agreement Regarding Certus Stock Income Rights Between Wang Xiangrong & Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.*)

Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd. (Seal)

Contact Person: Zhang Chunyuan

Contact Address: Building 18, Jiangsu Software Park, No. 699-22, Xuanwu Avenue, Xuanwu District, Nanjing City

E-mail: zhangcy@certusnet.com.cn

Contact Tel. 13681958151

Legal Representative or Authorized Representative (Signature):

LIJUN LU   (Signature)

63/81

Appendix:

(This page includes no text, serving as the signing page-3/3 of the *Repurchase Agreement Regarding Certus Stock Income Rights Between Wang Xiangrong & Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.*)

Contact Person: Zhang Chunyuan

Contact Address: Building 18, Jiangsu Software Park, No. 699-22, Xuanwu Avenue, Xuanwu District, Nanjing City

E-mail: zhangcy@certusnet.com.cn

Contact Tel. 13681958151

LIJUN LU (Signature):

(Signature)

64/81

Appendix:

Repurchase Agreement

Regarding Certus Stock Income Rights

Between

Wang Xiangrong

&

Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.

December 20, 2021

74/81

Appendix:

## Party A: Wang Xiangrong

ID No. 330106197202220012

Address No. 7, Wayushan Road, Taiping Sub-district, Wenling City, Zhejiang Province

## Party B: Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.

Registered Address: No. 12, Industrial Park, Wanggou Town, Feng County, Xuzhou City, Jiangsu Province

Legal Representative: LIJUN LU

## Party C: LIJUN LU

US Passport No. 548446178

Address: Building 18, No. 699-22, Xuanwu Avenue, Xuanwu District, Nanjing City

**Whereas:**

Party A and Party B signed the *Transfer Agreement Regarding Certus Stock Income Rights between Wang Xiangrong and Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.* (hereinafter referred to as the *Income Rights Transfer Agreement*) on December 20, 2021. To further clarify the specific content of the 'repurchase of the subject matter of transfer' in the *Income Rights Transfer Agreement*, the Parties hereby agree as follows through mutual consultation on a voluntary and equal basis:

**I. Definitions**

Unless otherwise agreed herein or required by the context of this Agreement, all defined terms and abbreviations used in this Agreement shall have the same meanings as those described in the *Income Rights Transfer Agreement*.

**II. Arrangement for Repurchase**

Given the Parties' engagement in the transfer of the Stock Income Rights under the *Income Rights Transfer Agreement* is based on their respective expectations regarding the future returns of the underlying stocks; to mitigate risk of deviation from expectations, the Parties hereby mutually agree to establish an Observation Period and corresponding repurchase arrangement as follows:

1. The Parties hereby establish an Observation Period of[18 months] commencing on the effective date of this Agreement. Party A shall have the right, at any time after the expiration of the Observation Period, to demand Party B to repurchase all the subject matter of transfer held by Party A under the *Income Rights Transfer Agreement* by sending a written notice to Party B. Party B shall fulfill the repurchase obligation in accordance with Party A's written notice;

Appendix:

2. The Repurchase Consideration shall be implemented according to Certus' IPO progress during the Observation Period in one of the following two methods (To avoid ambiguity, all amounts shall be denominated in CNY and rounded to the nearest integer):

(1) Successful IPO of Certus during the Observation Period: repurchase consideration calculated as follows

Repurchase consideration= Consideration of the Current Transaction (CNY20,000,000) *(1 + N/365 * 10%)+ (Average Price of the 20 consecutive trading days prior to the Repurchasing Date agreed upon by both parties — CNY9/share- Threshold Return/share) *Quantity of underlying stocks + All benefits of underlying stocks under (2) ~ (5) of Article 1, Paragraph 2 of the *Income Rights Transfer Agreement* generated between the Signing Date and the Repurchasing Date;

Threshold Return/share = Consideration of the Current Transaction * N/365 * 10%/Quantity of underlying stocks;

'N' represents the period from the date of signing of this Agreement until the date when Party B completes the payment of the repurchase consideration; unit: "day";

Considering the possibility of stock price fluctuations, Party B promises that, after Certus' IPO, as long as the repurchase is implemented, the repurchase consideration shall not be lower than Consideration of the Current Transaction (CNY20,000,000) * (1 + N/365 * 10%)].

(2) Failed IPO of Certus by the End of Observation Period: repurchase consideration calculated as follows

Repurchase consideration = Consideration of the Current Transaction * (1 + N/365 * 10%), where 'N' represents Days between the Agreement signing date and the date of full payment of repurchase consideration by Party B; unit: "day"

3. Upon Party A's sending of a written notice of repurchase under this Agreement, Party B shall transfer thefull repurchase consideration to Party A's designated bank account within[three (3)] business days after receiving the notice.

The account designated by Party A:

Account Name: Wang Xiangrong

Opening Bank: Agricultural Bank of China, Shinian Subbranch, Wenling City, Zhejiang Province

Account No. 6228 4803 6171 5380 719

4. If Certus completes its IPO prior to the expiration of the [18-month] Observation Period, Party A may issue a written notice to Party B at any earlier time, demanding the repurchase of all subject matter of transfer held by Party A under the *Income Rights Transfer Agreement* in accordance with the terms herein;

5. In the event that Party B needs to sell the underlying stocks specified in the *Income Rights Transfer Agreement* to fulfill its repurchase obligations under this Agreement, the arrangements related to the sale of the underlying stocks (including but not limited to the method of sale, sale price and timing of sale, etc.) shall be amicably negotiated between Party A and Party B, but the decision-making power shall belong to Party A;

Appendix:

6. Given that Party B is the controlling shareholder of Certus and thus subject to statutory lock-up period restrictions after listing, Party B agrees: in the event that Certus completes its IPO and Party B's shares are still in the statutory lock-up period, Party B shall procure its designated natural person shareholders to reduce the corresponding Quantity of underlying stocks required to fulfill its repurchase obligations hereunder;

7. All taxes and fees arising from reduction of underlying stocks by Party B's designated natural person shareholders shall be borne by Party B (share price within CNY 9/share); Party A shall bear taxes (when share price exceeding CNY 9/share). The specific amount of the above-mentioned taxes and fees shall be calculated in accordance with the effective securities regulatory rules, tax laws and regulations at the time of the reduction and the tax refund policies of the place where the reduction is made. This net amount (taking into account the tax refund factor) shall be used as the benchmark for the tax and fee sharing between Party A and Party B;

8. Upon Party B's full payment of the repurchase consideration to Party A in accordance with this Agreement, all subject matter of transfer and associated entitlements shall automatically revert to Party B, and Party A shall cease to enjoy any rights over the subject matter of transfer.

## III. Unlimited Joint and Several Guarantee by Party C

Party C hereby provides unlimited joint and several guarantee for all obligations and liabilities of Party B under this Agreement, including but not limited to payment obligations for the income from the underlying stocks, repurchase obligations of the subject matter of transfer, liability for breach of contract, and any other obligations arising hereunder.

## IV. Declaration, Statement, and Warranty

1. Party A is a legally established and validly existing partnership, and Party B is a legally established and validly existing legal entity. Both parties have made effective resolutions and obtained full authorization in accordance with their internal procedures when signing this Agreement, and both parties have the right to sign and perform this agreement.

2. Both parties agree that if, during the actual execution of the various provisions under this Agreement, in the event that supplementary documents need to be signed to ensure the performance of the aforementioned agreements, both parties are obligated to cooperate with the other party in signing the aforementioned documents, provided that the contents of the aforementioned documents do not conflict with this Agreement or infringe upon the rights and interests of any party under this Agreement.

## V. Confidentiality

Both Parties shall maintain strict confidentiality regarding all confidential information disclosed during the execution and performance of this Agreement, including but not limited to the existence of this Agreement, terms and conditions herein, and any related documents or information. The confidentiality obligation shall remain perpetual.

Appendix:

## VI. Liability for Breach

1. Unless otherwise specified herein, any failure by a Party to perform its obligations, responsibilities, commitments, statements, or warranties under this Agreement shall constitute a material breach, and the breaching party shall compensate for all the losses suffered by the observant party thereby.

2. The breach-related clauses under this Agreement are mutually independent, which means a Party's claim of liability for breach against the other party under one provision shall not preclude its rights to claim under other provisions.

## VII. Miscellaneous Provisions

1. This Agreement shall be governed by and construed in accordance with the laws of China (for purposes of this Agreement, excluding Hong Kong SAR, Macao SAR, and Taiwan). Any dispute arising from this Agreement shall first be resolved through negotiation; if negotiation fails, either Party may submit the dispute to the Beijing Arbitration Commission for arbitration in accordance with the arbitration rules.

2. Each Party shall bear its own taxes, fees, and other charges incurred in connection with the execution and performance of this Agreement.

3. No modification, amendment, or waiver of any provision of this Agreement shall be effective unless made in writing and signed by both Parties or their duly authorized representatives.

4. Both Parties hereby confirm that either Party may assign or transfer any of its rights or obligations under this Agreement to any third party without the prior written consent of the other Party.

5. If any provision in this Agreement is held wholly or partially illegal or invalid, such provision or its related part shall be deemed not to constitute a part of this Agreement within the above-mentioned scope; while the remainder of the Agreement continues in full force. Both parties shall, within a reasonable scope, make their best efforts to replace the invalid or unenforceable provisions with effective and enforceable alternative provisions with the closest intentions to the original ones.

6. No failure or delay by either Party in exercising any right, power, or remedy under this Agreement shall constitute a waiver thereof, nor shall any single or partial exercise of any such right, power, or remedy preclude any other or further exercise thereof.

7. Any notice or other letter sent by one Party to the other Party under this Agreement shall be made in written Chinese and sent by personal delivery, mail, fax, or email. Once delivered or sent in accordance with the following terms, it shall be deemed to have been properly sent or served: (i) Personal delivery: upon the recipient's signing for receipt of the notice; (ii) Registered mail: the fifth (5) business day after the mail is sent; (iii) Express mail: the third (3) business day after the mail is sent; (iv) Fax: the next day after sending of the fax; (v) Email: the next day after the arrival of the email in the email address designated by the person to be served.

8. This agreement shall be made in sextuplicate, with each party holding two. It shall come into effect upon being signed by the legal representatives or authorized representatives of each party and affixed with their official seals.

78/81

Appendix:

(This page includes no text, serving as the signing page-1/3 of the *Repurchase Agreement Regarding Certus Stock Income Rights Between Wang Xiangrong & Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.*)

Contact Person: Zhang Xubo

Contact Address 13th Floor, Block A, Oriental International Yuanzhong Mansion, No. 2900, North Zhongshan Road, Shanghai City

E-mail: stevenzhang@leo.cn

Contact Tel. 13601649601

Wang Xiangrong (Signature):

(Signature)

79/81

Appendix:

(This page includes no text, serving as the signing page-2/3 of the *Repurchase Agreement Regarding Certus Stock Income Rights Between Wang Xiangrong& Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.*)

Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd. (Seal)

Contact Person: Zhang Chunyuan

Contact Address: Building 18, Jiangsu Software Park, No. 699-22, Xuanwu Avenue, Xuanwu District, Nanjing City

E-mail: zhangcy@certusnet.com.cn

Contact Tel. 13681958151

Legal Representative or Authorized Representative (Signature):

LIJUN LU   (Signature)

80/81

Appendix:

(This page includes no text, serving as the signing page-3/3 of the *Repurchase Agreement Regarding Certus Stock Income Rights Between Wang Xiangrong & Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.*)

Contact Person: Zhang Chunyuan

Contact Address: Building 18, Jiangsu Software Park, No. 699-22, Xuanwu Avenue, Xuanwu District, Nanjing City

E-mail: zhangcy@certusnet.com.cn

Contact Tel. 13681958151

LIJUN LU (Signature):

Signature

*Seal: This document has been verified and is in conformity with the original.*

*Special Seal for Copy Materials, Beijing Arbitration Commission ( ) JZAZ   No. Copied on (date)*

*(Cross-Page Seal of Beijing Arbitration Commission)*

*(Cross-Page Seal: Xuzhou Huamei Qiyue Enterprise Management Consulting Co., Ltd.)*

*(Cross-Page Seal:Dongyang Certus Information Technology Co., Ltd.)*

*(Cross-Page Seal:Xingtai Certus Information Technology Co., Ltd.)*

**81/81**

# 公 证 书

(2025)浙温证字第 7026 号

　　申请人：王相荣，男，一九七二年二月二十二日出生，公民身份号码：330106197202220012。

　　公证事项：复印件与原件相符

　　兹证明前面的复印件与王相荣出示给本公证员的《（2023）京仲案字第 06963 号案件仲裁协议暨债务加入协议》的原件相符。

中华人民共和国浙江省温岭市公证处

公证员　

二○二五年九月二十八日

LI 34904469

# NOTARIAL CERTIFICATE

(Translation)

(2025) ZWZZ No. 7026

Applicant: Wang Xiangrong, male, born on February 22, 1972, ID Card No. 3301061972022220012.

Issue under Notarization: True and exact copy

This is to certify that the foregoing copy conforms to the original of Agreement on Arbitration and Debt Assumption for the Case (2023) JZAZ No. 06963 showed to me, the notary, by Wang Xiangrong.

Wenling Notary Public Office

Zhejiang Province

The People's Republic of China

Notary: Wu Jintao

September 28, 2025

LI 34904480

# 公 证 书

(2025)浙温证字第 7027 号

申请人：王相荣，男，一九七二年二月二十二日出生，公民身份号码：330106197202220012。

公证事项：译本与原本相符

兹证明前面的(2025)浙温证字第 7026 号《公证书》的英文译本内容与该公证书中文原本相符。

中华人民共和国浙江省温岭市公证处

公证员　吴锦涛



二〇二五年九月二十八日

LI 34904472

# NOTARIAL CERTIFICATE

(Translation)

(2025) ZWZZ No. 7027

Applicant: Wang Xiangrong, male, born on February 22, 1972, ID Card No. 330106197202220012.

Issue under Notarization: true and exact translation

This is to certify that the attached English translation of the foregoing NOTARIAL CERTIFICATE (2025) ZWZZ No. 7026 conforms to the original document in Chinese.

Wenling Notary Public Office

Zhejiang Province

The People's Republic of China

Notary: Wu Jintao

September 28, 2025

LI34904481



本附加证明书仅证明公文书上的签名,签署人签名时的身份,以及盖章时可证明公文书上的印鉴属实,附加证明书不对公文书内容予以证明。This Apostille only certifies the authenticity of the signature, the capacity of the person who has signed the public document and, where appropriate, the identity of the seal or stamp which the public document bears. This Apostille does not certify the content of the document for which it was issued.
Visit https://consular.mfa.gov.cn/VERIFY/ and scan the QR code to verify the issuance of this Apostille.

12834430

附 加 证 明 书
**APOSTILLE**
(1961年10月5日海牙公约)
(Convention de La Haye du 5 octobre 1961)

1. 文书出具国: 中华人民共和国
   Country: People's Republic of China

本公文书 This public document

2. 签署人 吴锦涛
   has been Wu Jintao
   signed by

3. 签署人身份 公证员
   acting in the Notary Public
   capacity of

4. 印鉴名称 浙江省温岭市公证处
   bears the Wenling Notary Public Office, Zhejiang Province
   seal/stamp of

证明 Certified

5. 签发地 杭州               6. 签发日期  2025年10月15日
   at     Hangzhou          the        October 15,2025

7. 签发人 金炜/Jin Wei
   by    浙江省外事办公室
         Foreign Affairs Office of Zhejiang Province

8. 附加证明书编号 认字第253300084847号
   No

9. 签发机关印鉴            10. 签名:
   Seal/Stamp              Signature: